## LINEMAN KILLED BY FALL FROM A POLE.

Court of Appeals for Lucas County.

RILLA DAVIDSON, ADMINISTRATRIX OF THE ESTATE OF JOHN
H. DAVIDSON, DECEASED, v. THE TOLEDO HOME
TELEPHONE COMPANY.

Decided, February 23, 1915.

*Negligence—Guy Wire of Telephone Pole Breaks, Causing Fall of Line-
man—Custom or Habit of Linemen to Depend on Guy Wires for
Support Competent—Where Known to the Company, in Determin-
ing Whether Ordinary Care Was Used.*

1. Where an employee making repairs at the top of a telephone pole
and supporting himself in part by the aid of a guy wire, which
was claimed to be defective, fell, by the breaking of the guy wire,
and was killed, evidence of a custom, usage, habit or general prac-
tice of employees to use the guy wire as a support, known to the
employer, or which by the exercise of ordinary care should have
been known by it, is competent.

2. While neither custom nor usage can justify or excuse a negligent
act, they may be competent evidence to aid a court in determin-
ing whether a given act was negligent, the ultimate question being
whether under all the circumstances ordinary care was exercised.

*O. S. Brumback,* for plaintiff in error.
*Doyle, Lewis, Lewis & Emery,* contra.

RICHARDS, J.

Error to the court of common pleas.

John H. Davidson, the decedent, was an employee of the
Toledo Home Telephone Company as a lineman, and lost his
life as a result of an injury received on December 16, 1913, by
falling from a pole of that company located near West Woodruff
street in the city of Toledo. It is admitted that the company had
in its employment a large number of workmen and had not paid
into the state insurance fund the premium provided for by the

workmen's compensation law. At the close of the evidence offered on behalf of the plaintiff, the court, on motion, directed a verdict for the defendant company and on that verdict judgment has been rendered.

The petition alleges that in the performance of the duty of the decedent as a lineman he had climbed a pole of the company and, in connection with a fellow-workman, was making certain repairs. It is further averred that the decedent, to steady himself upon the pole in the way that had been customary, placed his leg against or upon a guy wire and the guy wire suddenly broke and he was precipitated to the ground, a distance of about thirty feet. It is averred that it was and had been customary for linemen in performing that duty to use the guy wire as he was doing, and that that custom or usage was well known to the company, and that this guy wire was old, rusty and defective.

The plaintiff in undertaking to make out a case offered evidence for the purpose of proving the practice or custom of workmen engaged in the performance of the duties about which the decedent was employed, to use the guy wires for the purpose of supporting themselves while performing similar duties on poles of the defendant company. This evidence was rejected, and the plaintiff not being allowed to introduce evidence of the usage or custom of devoting the guy wires to this purpose, it resulted that the trial judge directed a verdict for the defendant. Much of the evidence which was offered on this branch of the case was incompetent and was rightly rejected, but a majority of the court are of opinion that some of it which was rejected was competent and should have been recived. The trial judge appears to have entertained the view that the existence of a custom or usage was not a matter of fact to which a witness should be permitted to testify. We hold, however, that a witness who is properly qualified should be allowed to testify as to the existence of a custom or usage of which it is shown he has knowledge, and that such testimony is not matter of opinion, but is as to the existence of a fact.

One Louis J. Higgins was called as a witness and it developed that he had been employed in line work for the Toledo Home Telephone Company from about February, 1912, to September, 1913, and was familiar with the methods in which such work was ordinarily performed by linement in the employment of that company. He was asked this question: "What, if any, use was customarily made of the guy wire upon the poles like the one from which Mr. Davidson fell, by the men at work on the pole to support themselves?" This question was objected to by counsel for the defendant, whereupon the plaintiff offered to prove by the answer of the witness that the men did the work customarily by leaning against the guy wire, or by putting their leg over it, as they might find it convenient, to help themselves in doing their work. The trial judge, in sustaining the objection, stated that the objection was not only to the form of the question, but also as calling for a conclusion of the witness. We think the court erred to the prejudice of the plaintiff in sustaining the objection to this question and other questions of like character. The examination of the witness showed that he was testifying, or attempting to testify, to the manner in which linemen ordinarily supported themselves on poles in the performance of their duties at and before the date of the decedent's fatal injury. If this evidence and other of like character had been admitted and had shown that the practice was uniform, extending over such a period prior to the injury as would authorize the jury to find that the company knew the guy wires on its poles were being used for that purpose, then a question of fact would have been raised as to the negligence of the defendant company. The evidence, if received, would have tended to show such practice, and we think it was prejudicial error to exclude the same. The primary purpoes of a guy wire is, of course, to be what its name indicates and thus furnish support and stability to the pole, we suppose it is competent to show by evidence, if it is a fact, that the guy wire is commonly used for an additional purpose, for instance, to furnish support and stability to workmen while on the pole; and if the evidence should show that the

guy wires of this company were commonly devoted to that additional purpose, at and before the fatal injury to the decedent, and to the knowledge of the company, then the inquiry would properly be made whether the company was guilty of any want of ordinary care in maintaining the guy wires, in view of such general use, and whether, in view of such evidence, the injury could reasonably be anticipated. We do not mean to intimate that the evidence was of such a character as would have justified the jury in finding the existence of such practice or custom, but only that the evidence tended to show the same and should have been received.

It is insisted in argument by counsel for the defendant in error that the result reached in the court of common pleas is required by the decision of the Supreme Court in *Cincinnati Gas & Electric Co.* v. *Archdeacon, Admr.*, 80 O. S., 27. Much similarity exists between the two cases. In that case, however, the doctrine of contributory negligence was applicable and to that extent the remarks of the Supreme Court are not pertinent to the case at bar. It will also be noticed that no attempt was made in that case to show by evidence that the appliances on the pole were devoted to any other than their primary purpose. In the course of the opinion Shauck, Judge, speaking for the court, uses the following language:

,"In the exercise of such foresight would it have been foreseen that these conditions, inaccessible to persons not engaged in the dangerous occupation of maintaining the lines, might naturally lead to injury to those so engaged? The obvious and known purpose of guy wires is to give stability to the poles to which they are attached. The obvious and known purpose of the stirrups or steps with which this pole was supplied was to furnish the means of ascent and descent to those who were charged with maintaining the wires. * * * In view of the considerations actually presented, can it be said that the injury to the decedent was a consequence to be anticipated in the exercise of ordinary foresight?"

The court in that case very properly concluded that the injury could not reasonably be anticipated and therefore held the com-

pany was not liable; and the same result would doubtless be reached in the case at bar, unless by the evidence it can be made to appear that it was common practice at and prior to the date of the fatal injury to the decedent, to use the guy wires in the manner claimed, and that the existence of such practice was known to the defendant company or should have been known by it in the exercise of ordinary care. It thus becomes apparent that the existence of a general practice to use the guy wires in that manner was one of vital importance.

For the error in excluding evidence offered by the plaintiff on that subject, and for directing a verdict for the defendant, the judgment will be reversed and the cause remanded for a new trial.

CHITTENDEN, J., concurs.


KINKADE, J. (dissenting).

This judgment of reversal goes much further, of course, than deciding merely that the plaintiff had the right to introduce competent evidence along the lines stated in the foregoing opinion. The judgment entered here means that if on a re-trial the plaintiff produces competent evidence tending to show that the telephone company knew that its linemen were using the guy wires as the one described in this case was used, then the question whether the company did in fact know of such use, or by the exercise of ordinary care would have known of it, must be submitted to the jury; and in case the jury find, upon evidence sufficient to justify such finding, that the company is chargeable with knowledge of such user, then, as a matter of law, there arises out of that situation thus established a duty on the part of the telephone company to exercise ordinary care to construct and maintain all its guy wires so that they will be reasonably safe for use by linemen to sustain themselves while they are upon the pole, quite regardless of the fact that the guy wires were put there for a wholly different purpose.

To state the proposition as it will be applied to situations in general, I understand it to be this: that whenever an employer

learns that his employees have abandoned the use of suitable and
sufficient appliances furnished for their convenience in a given
line of duty, and have voluntarily and wholly without suggestion
or invitation so to do from the employer, adopted the practice
of using other appliances and constructions found near at hand
which were constructed by the employer for a wholly different
purpose and with no thought or intention upon his part of mak-
ing them suitable or sufficient for the other uses to which his
employees have elected to subject them, then the employer, if he
wishes to safeguard himself against claims for damages resulting
from injuries occurring on account of the insufficiency in any
particular of these appliances and constructions to sustain all the
strains and demands of the new uses voluntarily put upon them
by his employees, must positively forbid each of his employees
to use the appliances for the purposes for which they were never
intended, and stand ready at all times to establish in court, by
a preponderance of evidence, that he did forbid such use, or
he must pursue the only other course left, that is to say, he
must forthwith undertake the task of making the appliances
reasonably safe for the new uses to which his employees have
elected to subject them; and if he fails to exercise the full mea-
sure of ordinary care in seeking to accomplish this, such failure
will make him liable for all damages his employees may sustain
by reason of injuries resulting from the insufficiency of such
appliances to answer the necessities of the new uses imposed upon
them.

Counsel for the plaintiff frankly and consistently contended
in the trial below and in argument here, that he had the right
to prove that it was the habit of linemen when upon the poles
to use, for the purpose of sustaining themselves, anything found
there, no matter what, or for what primary purpose it had been
placed there originally; that they might leave in the repair
wagon the safety belts furnished by the company for use by the
linemen in such cases and not use them at all, and that the
same guaranty by the company of safety and sufficiency that
would attend the use of the safety belts applied with equal force

to every other appliance and construction found upon the poles or within the reach of the men when on the poles, when these latter were voluntarily substituted for the former by the employees.

Numerous illustrations might be put showing the impracticability, and, I might well say, the utter impossibility of keeping pace with any such varying and shifting duty, to say nothing of what seems to me to be the gross injustice in the claimed duty. The practical effect of the proposition, if sound, is to enable employees to say to their employer, in substances, about this:

"While it is true that when we entered your employ you had exercised ordinary care in every respect to make the place of our employment reasonably safe and the appliances with which we were expected to work reasonably safe for our use, nevertheless, we, of our own motion, and without any suggestion at all from you that we should so do, elected to abandon the appliances which you furnished and substituted others not intended for like uses and we have been injured wholly by reason of this substitution and, therefore, you must respond to us in damages for those injuries because you knew of the substitution and you failed to make the appliances which we elected to use as substitutes for the ones you furnished equally as safe and sufficient as those you did furnish."

In this case, had the company omitted to supply the linemen with safety belts, this omission would have been the first ground of negligence charged in the plaintiff's petition, and one of the first things plaintiff's counsel would have attempted to prove on the opening of the trial would have been the negligence of the company in not furnishing safety belts, and he would have sought to sustain this by proving that it was the custom of all other like companies to equip their men with safety belts, so that when the men reached the top of a pole, or any point on the pole, where they had work to do, they could easily make their positions there entirely safe by passing their safety belts around the pole, which would enable them to freely use both hands in doing their work instead of being obliged to hold on to the steps, the pole or the cross-arms with their hands.

A safety belt *not* furnished would have been described over and over again as a thing of the greatest importance, and the omission to furnish it would have been dwelt upon as complete proof of the heartless indifference and gross negligence of the company.

A safety belt that *is* furnished is quite a different affair. In fact, it is of little or no use and may be left in the repair wagon standing near the pole, particularly if, as in this case, it is the foreman's safety belt that is so left in the wagon. Why is this? Manifestly, it is for the very simple, plain reason that the safety belt *was* furnished in this case; and had it been used for the purpose for which it was specially intended and was suitable, this accident would never have happened. The company not having been negligent in failing to furnish a good and sufficient safety belt, and the belt, though in the repair wagon and near at hand, not having been used, it became necessary to find some other act or omission of the company which constituted negligence, and hence the development of the theory manifest in this record. I can not think that the proposition of law presented by counsel for the plaintiff in error is sound. I see no ground upon which the plaintiff can recover in this action, even though the facts when established are found to be as favorable to the plaintiff as claimed in argument by plaintiff's counsel. For the reasons stated, I think the judgment entered below in favor of the defendant in error should be affirmed.

## ON APPLICATION FOR REHEARING.

### (June 7, 1915.)

RICHARDS, J.

The original opinion in this case, announced on February 23, 1915, having been by a divided court, and the application for rehearing having been thoroughly argued in briefs filed by counsel, we have given a re-examination to the questions involved. Such re-examination has not resulted in any different conclusion than that which was heretofore announced.

A majority of the court are of opinion that evidence of a custom, usage, habit or practice of using the guy wire as an additional support to workmen, generally followed and known to the defendant, or practiced for such length of time that it should by ordinary care have been known to it before the fatal injury, is competent evidence in this case. We understand that there is a material difference between custom and usage, habit or practice. Usage, as has been well said, does not imply immemorial existence or general prevalence as does custom. In the consideration of this case we have not used the words usage or habit or practice as meaning the same thing as custom. General custom may itself come to have the force and effect of law. In many cases evidence of usage or habit or practice may be admissible to show whether the defendant has been guilty of negligence or the plaintiff guilty of contributory negligence. A good illustration of this is found in a decision by the circuit court in Lucas county, entitled *The L. S. & M. S. Ry. Co.* v. *Botefuhr, Administrator,* 10 C.C.(N.S.), 281; 20 C. D., 67. That decision was concurred in by all the judges sitting, namely, Haynes, Parker and Taggart, JJ., and was affirmed by the Supreme Court, without report, 78 O. S., 413. The syllabus and the opinion in the case, considered together, show the varying uses of the words custom and habit. It was held in that case that evidence of the habit or custom of the conductor representing the company was admissible not only upon the question of whether the company was in the exercise of ordinary care, but also upon the question of whether the deceased, being aware of the custom and of the habit of the conductor, was guilty of contributory negligence or exercised ordinary care. Parker, J., in the course of the opinion, uses this language:

"The evidence in the case, we should say, is hardly sufficient to establish a custom having the force of law, and perhaps not one having the force of an established and promulgated rule binding upon all employees of the company, at all times and places. But we think it is quite sufficient to show this habit in the performance of the work upon the part of this conductor and this trainman when working together in the making up of that train." * * *

The court say this on page 71:

"As to the admissibility of evidence of this character we think there can be no question."

And the court cite the following earlier decisions of this court establishing that doctrine; *Care* v. *Pierce*, 10 C. D., 711, affirmed without report, 64 O. S., 578; *Pennsylvania Co.* v. *Mahoney*, 12 C. D., 366.

It is said in 12 Cyc., 1079, that, "What is negligence and what is due care may depend upon the customs and habits of people in the same place and under similar circumstances." We suppose it to be well established law that custom or usage can not excuse or justify a negligent act, but may be evidence on the question whether the act was negligent; or, to put the same thing in other phraseology, what usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not. Of course, the ultimate question in this case was as to whether, under the issues made in the pleadings, the defendant was guilty of negligence, and the existence or non-existence of the claimed custom or practice was only material in so far as it bore on the question of whether it had or had not failed to exercise ordinary care.

In view of the failure to comply with the workmen's compensation law, the question of the contributory negligence of the deceased may not be important, but the principle applies equally to the claimed negligence of the defendant company.

A majority of the court are of opinion that the application for a rehearing must be denied.

CHITTENDEN, J., concurs.