[No. 15401. Department One. December 1, 1919.]

NORTH COAST POWER COMPANY, *Respondent*, v. COWLITZ,
CHEHALIS & CASCADE RAILWAY, *Appellant*.[1]

RAILROADS—ACCIDENT TO TRAINS—COLLISION — CONTRIBUTORY NEG-
LIGENCE. A collision between an electric interurban car and a rail-
road flat car, using by agreement the same tracks, was due to the
palpable contributory negligence of the electric motorman in run-
ning his car at speed through a dense fog past a siding when he had
been ordered to operate his car under control.

Appeal from a judgment of the superior court for
Lewis county, Reynolds, J., entered January 13, 1919,
upon findings in favor of the plaintiff, in an action in
tort, tried to the court. Reversed.

*A. A. Hull* and *H. E. Donohoe,* for appellant.
*Hayden, Langhorne & Metzger,* for respondent.

MITCHELL, J.—The respondent, North Coast Power
Company, sued the appellant, the Cowlitz, Chehalis &
Cascade Railway, for damage to one of its electric
cars caused by a collision with the appellant's cars
between John street and Eleventh street, in the city
of Chehalis, on November 1, 1917. In the trial with-
out a jury, it recovered judgment, from which an ap-
peal has been taken. The issues were negligence on
the part of the appellant and contributory negligence
on the part of the respondent.

The respondent owns and operates a single-track
electric street-car line from Centralia to Chehalis, with
intermediate sidings for the passing of its cars. At
Chehalis its track passes near the Northern Pacific
Railroad station, thence on south to John street. Con-
necting at the latter point, appellant owns and oper-
ates a single-track railroad for the transportation of

[1]Reported in 185 Pac. 615.

freight and passengers, which extends into the south-
eastern part of the county. On November 9, 1914, a
written agreement was entered into by the two com-
panies by which appellant could use respondent's
track from John street north to the Northern Pacific
station, and respondent could use appellant's track
from John street south to Eleventh street, a distance
of twelve blocks (about thirty-six hundred feet) to a
point near the state training school. Respondent ex-
tended its trolley wire over the track from John street
to Eleventh street, and there was provided about mid-
way between those streets a siding, over which there
was no wire, to accommodate appellant's rolling stock
as the electric cars passed over that stretch of the
track. The written agreement contained no schedule
as to time for the movement of trains, nor was there
any signal or other system employed to advise each
of the other's use of the track. Respondent had main-
tained a well-known time table by which its cars left
Eleventh street, bound north, twenty-five and fifty-five
minutes after the hour. Appellant had no time table
for the movement of its freight cars, but generally
made them up and moved them along this stretch of
track, among other times, about seven to eight o'clock
in the morning. There is considerable testimony as to
which had the right of way over the other, sometimes
spoken of as a clear right of way. The traffic officers
of the two companies had several conversations look-
ing to the establishment of regulations to prevent ac-
cidents, intending to put them in writing, which was
never done. We are satisfied each had the right to
use the track when unoccupied by the other, but in the
case of conflict respondent had the right of way, for
which purpose the switch or siding was prepared and
equipped to accommodate the cars of appellant only.
Such was the practice of the parties that on frequent

occasions respondent's cars were delayed until appellant retired its engines and cars or placed them upon the switch. Respondent's cars were frequently off time at the Eleventh street terminus, caused generally by the interference of appellant in switching and making up its trains in that vicinity.

For some hours before and at the time of the collision, there was a dense fog all along the electric car line. At Chehalis, where the accident occurred, the fog was so dense that an object the size of a flat car could not be seen at a greater distance than fifty feet. The electric car last going north from Eleventh street prior to the arrival of the one in the collision, due to leave at 7:25 a. m., was delayed some eight or ten minutes by the use of the track by appellant in switching its cars. This loss of time in turn caused the south-bound electric car so much delay at the passing station between Chehalis and Centralia that the southbound car, which was operated by one Arthur R. James, was four or five minutes late in arriving at the siding between John street and Eleventh street, where the collision occurred, about eight o'clock a. m. In the meantime, just before the accident, and for some unexplained reason or lack of it, appellant had left several of its flat cars on the main track by the siding on which its locomotive was standing. On the arrival of the street car operated by James, he could not see the flat car in time to avoid a collision. We are satisfied, as was the trial court, the facts established negligence on the part of the appellant.

On the other hand, respondent is chargeable with pronounced contributory negligence. William A. Schoel, manager of the respondent at and for eight months prior to the date of the accident, testified that the first thing told every motorman was to look out for other trains between John and Eleventh streets,

and that he gave Arthur R. James verbal instructions
to operate his car under control and look out for trains
between Eleventh street and the Northern Pacific pas-
senger depot. The evidence is undisputed that the
maximum speed of the electric car was twenty-two
miles per hour; that, at such speed, the car could not
be stopped in less than one hundred and twenty-five
feet on an ordinary track; and that the stretch of
track where the collision occurred was straight and
level.

Arthur R. James, the motorman in charge of the
electric car, testified that he was thirty-one years of
age; that he had been working, without pay, for the
company a week, "breaking in on the car," and that
the accident occurred on his second trip from Cen-
tralia on the morning of the first day he worked for
pay; that it was very foggy both trips; could see ahead
possibly fifty feet; "you would have to be right up to
them (passengers) before you could see them, because
of the fog;" that he knew fog caused a difficult, slick
rail; that he knew appellant operated its freight cars
on this track, and himself had been held up before by
freight cars on this main line; that the freight cars
with which he collided were within fifty feet of him
when he first noticed them, at which time his car was
"open to the limit, going as fast as it could . . .
about twenty miles an hour;" that he did not know
within what distance he could have stopped his car
under the circumstances, but did not think it could be
stopped within fifty feet, but thought it might pos-
sibly be stopped within that distance if going only ten
miles an hour; and that, for the operation of his car,
he had received orders to be on the lookout below John
street for appellant's freight and gas cars.

It is, according to both reason and authority, the
rule that what would be due care under certain cir-

cumstances would not be due care under other or different circumstances, and that, if anything in the surrounding conditions and circumstances reasonably suggests the necessity for an increase of care to avoid peril and damage, the duty to increase such care proportionately increases. This court, in *Helliesen v. Seattle Elec. Co.,* 56 Wash. 278, 105 Pac. 458, tersely said: "In determining the question of contributory negligence due care or ordinary prudence is the only known test." The evidence here presents a case of plain, palpable contributory negligence. The motorman, in defiance of the caution and prudence not only suggested but demanded by his own knowledge based upon observation and experience as to the probability of there being freight cars on the main line south of John street, and in violation of the positive instructions of his superior, madly drove his car at that place with a speed far beyond his power of checking it within the range of his vision. Such contributory negligence precludes any right of recovery, notwithstanding the negligence on the part of the appellant. *Anson v. Northern Pac. R. Co.,* 45 Wash. 92, 88 Pac. 1058; *Stueding v. Seattle Elec. Co.,* 71 Wash. 476, 128 Pac. 1058.

Reversed, with directions to enter judgment in favor of the appellant.

HOLCOMB, C. J., PARKER, MACKINTOSH, and MAIN, JJ., concur.