LaBOUNTY, ADMR., *v.* THE DEFIANCE GAS & ELECTRIC
CO. ET AL.

*Negligence—Use of same pole by electric and telephone com-*
*panies—Exercise of care toward their employes and those*
*of independent contractors—Risk not assumed where*
*defect not obvious or known—Telephone repairman's death*
*due to defective strain insulator or guy wire—Questions*
*for jury—Negligence, proximate cause and contributory*
*negligence.*

1. Where electric light and telephone line were attached to
   same pole, each company *held* to have duty to use ordinary
   care toward those who might use pole for making re-
   pairs, whether as employe ·of either of them or as em-
   ploye of independent contractor hired by either of them.
2. One repairing telephone system, who was electrocuted while
   standing astride guy wire on pole to open can containing
   telephone wire connections, cannot be held as a matter
   of law to have assumed risk, where death was due to
   defective strain insulator on guy wire, which defect was
   not obvious, nor known to decedent.
3. Where it was necessary for one repairing telephone system
   to straddle certain guy wire on pole, and he was electro-
   cuted due to defective strain insulator thereon, which
   defect was not obvious and apparent, and not known to
   plaintiff, insulator being cracked so that moisture might
   enter, questions of negligence, proximate cause, and con-
   tributory negligence were mixed questions of law and
   fact for jury.

(Decided May 18, 1925.)

ERROR: Court of Appeals for Lucas county.

*Mr. Charles A. Thatcher* and *Mr. Chester A.*
*Meck,* for plaintiff in error.

*Messrs. Denman, Wilson, Miller & Wall, Mr.*
*Rathbun Fuller,* and *Mr. James P. Schrider,* for
defendants in error.

WILLIAMS, J.   Plaintiff brought his action to recover for the death of his decedent, Roxie E. Schulz, who was killed by electricity on the real property of the defendant George R. Ford. The cause was tried to a jury, and at the conclusion of the plaintiff's evidence the court directed a verdict for the defendants. After overruling a motion for new trial, the court entered judgment for the defendants on the verdict for costs. Thereupon the plaintiff below instituted this proceeding in error and asks a reversal of the judgment.

On the property of the defendant George R. Ford was a pole of the Defiance Gas & Electric Company, which carried the high tension wires and other electric wires of that company, and from one to two feet beneath them were the telephone wires of the defendant in error George R. Ford.

On the occasion in question, the defendant George R. Ford had contracted with John J. Duck to make repairs upon his telephone system. John J. Duck sent certain of his employes, among them the decedent, to perform labor in connection therewith, and in the course of the work the decedent ascended the pole referred to in order to make an examination of certain wires or apparatus within a certain can containing telephone wire connections, which was located near the top of the pole and about a foot and a half underneath one of the high tension wires. To open the can it was necessary to lift the can top, and, while engaged in that operation, the decedent fell to the ground apparently killed by a current of electricity. The inference may be drawn from the evidence that he stood astride or against a guy wire attached

to the pole to the left of the can, and that when he lifted the can top it touched the high tension wire, sending a current of electricity through his body, and causing his death. Investigation made after he was killed showed that the strain insulator on the guy wire was defective.

Was there evidence tending to show the defendants were guilty of negligence? Upon this question we think that the case of *Cincinnati Gas & Electric Co.* v. *Archdeacon, Adm'r.*, 80 Ohio St., 27, 88 N. E., 125, is applicable. We quote from the first paragraph of the syllabus as follows:

"When two companies engaged in enterprises calling for the use of wires to carry electricity, arrange for the joint use of a pole to sustain them, each company is, with respect to such use, charged with the same duty toward employes of the other as to its own; and the correlative duty of the employes to exercise due care for their own safety is the same as to both companies."

The pole in question was erected upon the land of defendant George R. Ford by Tryon Bros., who constructed the electric light line attached to the pole and later sold and transferred their interest therein to the defendant Defiance Gas & Electric Company. There is a conflict in the evidence as to whether the telephone wires or electric light wires were first placed upon the pole, but there is evidence tending to show that both the telephone and the electric light wires were placed thereon as a part of the same transaction, the defendant Ford giving the use of the land, apparently without compensation, and Tryon Bros. furnishing and erecting the pole. Steps were placed thereon,

which were used generally for many years by those engaged in repairing both the electric light and telephone wires attached to the pole. There is therefore evidence tending to show a joint use of the pole by the two defendants, which would charge each with the same duty toward employes of the other as it owed to its own. We do not understand that it is claimed by any of the parties that the decedent was an employe of either of the defendants. We think, however, it would follow that there was a duty on the part of the joint users of the pole to use ordinary care toward those who might use the pole for the purpose of making repairs, whether as employe of either of the defendants or as employe of an independent contractor hired by either of the defendants.

It is claimed on behalf of the defendant George R. Ford that the doctrine of assumption of risk applies, and that it appears from the evidence as a matter of law that the decedent assumed the risk and cannot recover. While it is probably true that the doctrine of assumption of risk does not apply as between an employe of an independent contractor and the owner of the property who contracts with him for repairs, yet, if it does apply, we do not think that it can be held as a matter of law that the decedent assumed the risk of any injury growing out of a defect in a strain insulator on the guy wire, for the reason that such defect was not obvious; nor is there any evidence that the defect was known to the decedent or appreciated by him.

In the petition and amendment thereto the plaintiff claims that the defendants were guilty of negligence in three respects, as follows:

158        OHIO APPELLATE REPORTS.

LaBounty v. Defiance Gas & Elec. Co.    [21 Ohio

"(1) In not having their electric light wires equipped with proper insulation.

"(2) In maintaining telephone wire, can top, and other equipment connected with the telephone wires, at a distance of about 18 inches from the high tension wires, when the distance should not have been less than 6 feet for safety and protection of men required to work on said telephone wires.

"(3) In failing to have the guy wires attached to said pole insulated."

While as to the first two claimed grounds of negligence the dangers connected therewith were open, apparent, and obvious to an expert lineman, yet, as to the third ground, the evidence tends to show that the defect of the strain insulator was not open, obvious, and apparent, and decedent may well have assumed that the strain insulator was in good repair, and, as there is evidence tending to show that he could not have sustained his injury if the strain insulator had not been defective, questions of negligence, proximate cause and contributory negligence were mixed questions of law and fact for the determination of a jury under proper instructions of the court.

It might seem, at first blush, that these views are in conflict with those expressed in the case of *Gas Co.* v. *Archdeacon, supra,* in so far as the application of the principle of contributory negligence to this case is concerned. We believe, however, that there are certain marked distinctions between the facts in that case and the case at bar. Archdeacon, an experienced lineman, was employed by the telephone company as such. The telephone company had permitted "the electric light company

to stretch a guy wire from one of its poles to a pole of the telephone company in such a negligent manner as to endanger the lives of the employes of the telephone company, and also to attach to its poles, and there to maintain, wires for the transmission of heavy currents of electricity, the wire being defectively insulated to the great danger of its employes." There were steps on the telephone pole, and Archdeacon stepped off them onto the guy wire to throw a rope over the wires attached to the pole, and in doing so his hand accidentally hit the high tension wire, and, the guy wire being grounded, he was injured by the current of electricity and died therefrom. It is pointed out in the opinion in that case that he assumed that position purposely and unnecessarily. In the present case there is evidence tending to show that it was necessary for the decedent, or any other person performing the same work, to either stand on the guy wire or straddle it, to reach the can top.

We think a similar distinction was made by this Court of Appeals in its opinion in the case of *Davidson, Adm'x.,* v. *Toledo Home Telephone Co.,* 5 Ohio App., 237. In that case the decedent was an employe of a telephone company as lineman, and, to steady himself upon the pole in a way that had been customary, placed his leg upon a guy wire which broke and threw him to the ground. In the opinion Judge Richards uses the following language:

"It is insisted in argument by counsel for the defendant in error that the result reached in the court of common pleas is required by the decision of the Supreme Court in *Cincinnati Gas & Electric*

*Co.* v. *Archdeacon, Adm'r.,* 80 Ohio St., 27 [88 N. E., 125]. Much similarity exists between the two cases. In that case, however, the doctrine of contributory negligence was applicable, and to that extent the remarks of the Supreme Court are not pertinent to the case at bar. It will also be noticed that no attempt was made in that case to show by evidence that the appliances on the pole were devoted to any other than their primary purpose. In the course of the opinion, Shauck, J., speaking for the court, uses the following language:

" 'In the exercise of such foresight, would it have been foreseen that these conditions, inaccessible to persons not engaged in the dangerous occupation of maintaining the lines, might naturally lead to injury to those so engaged. The obvious and known purpose of guy wires is to give stability to the poles to which they are attached. The obvious and known purpose of the stirrups or steps, with which this pole was supplied, was to furnish the means of ascent and descent to those who were charged with maintaining the lines. * * * In view of the considerations actually presented, can it be said that the injury to the decedent was a consequence to be anticipated in the exercise of ordinary foresight?'

"The court in that case very properly concluded that the injury could not reasonably be antici-pated, and therefore held the company not liable, and the same result would doubtless be reached in the case at bar unless by the evidence it can be made to appear that it was common practice, at and prior to the date of the fatal injury to the decedent, to use the guy wires in the manner

claimed, and that the existence of such practice was known to the defendant company or should have been known by it in the exercise of ordinary care. It thus becomes apparent that the existence of a general practice to use the guy wires in that manner was one of vital importance.''

The *Davidson case* was distinguished from the *Archdeacon case* by reason of the fact that it was customary to use the guy wire in the way that decedent used it. The case at bar is distinguished from the *Archdeacon case,* in that there is evidence tending to show that it was necessary for any one opening the can top to come in contact with the guy wire in doing so.

We believe, however, that the most vital point distinguishing the case at bar from the *Archdeacon case* is the fact that there is evidence tending to prove that the strain insulator was defective by reason of the fact that it was cracked so that moisture might enter. Might not the decedent have assumed that the strain insulator was in working order, and might he not have inferred from that fact, especially in view of the evidence tending to prove that if the strain insulator were good the plaintiff's decedent would not have been injured, that, even though the can top touched the electric light wire where the insulation was off, he could receive no shock? We are of the opinion that this question must be answered in the affirmative. It is clear that the *Archdeacon case* stands on a different footing.

We think there is no prejudicial error in the record except in the ruling of the court below in directing a verdict for the defendants.

Upon a retrial of the case there may be other and additional evidence presenting many questions of law for the determination of the trial court. It has therefore been our purpose to refrain from expressing any opinion upon any other phase of the case than that involved by the question raised and now presented by the record before us.

For the reasons indicated, the judgment of the court below will be reversed, and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

RICHARDS and YOUNG, JJ., concur.