[No. 24987. Department One. August 28, 1934.]

RALPH J. SCOTT, *Respondent*, v. PACIFIC POWER & LIGHT COMPANY *et al., Appellants.*[1]

*Rigg, Brown & Halverson, John A. Laing,* and *Henry S. Gray,* for appellants.

*E. L. Bennett* and *Chas. F. Bolin,* for respondent.

[1]Reported in 35 P. (2d) 749.

MILLARD, J.—This action was instituted to recover from defendant corporation and its manager for personal injuries sustained by the plaintiff as the result of his bringing an iron pole, which he was removing from the roof of a building in Yakima, into contact with, or near to, a high-voltage distributing electric line of defendant corporation. From judgment entered on the verdict in favor of plaintiff, motions for judgment notwithstanding the verdict and for a new trial having been denied, the defendants appealed.

Respondent was employed by the Liberty Theatre Company, of Yakima, two days a week as a moving picture operator. He was also employed by the same company at other times for special work, such as distributing advertising matter, posting signs and general handy-man around the theatre. Such special jobs were by separate employment each time.

On the roof, which was used for advertising purposes, of the theatre company's building, was an iron pole (erected by respondent a few days prior to the accident) about twenty feet long, to which was attached advertising matter of the theatre company. On March 10, 1931, by direction of the theatre company's manager, respondent went to the roof of the building for the purpose of removing the pole. He detached the pole from its fastening and laid it over the coping of the alley side of the building. He then walked to the coping and looked over to determine whether he could safely lower the pole into the alley.

Appellant power company maintains distributing electric lines along the alley which the theatre building abuts. One of those lines was a distributing line carrying sixty-six hundred volts, and was not insulated. That electric line was from ten to twenty inches horizontally distant from the building, and twenty-four to thirty inches higher than the edge of the coping

of the roof. One end of the iron pole rested on the coping and extended upward above the uninsulated electric wires, and the other end of the pole rested on the roof at a point lower than the coping.

As stated above, after laying the pole down, respondent went to the coping to see whether the pole could be safely lowered into the alley. He then noticed the electric wires of appellant company, and realized the danger of an attempt to lower the pole at that point. He then decided to lower the pole further back, where the wires were not so close to the building. He walked from the coping back toward the end of the pole lying on the roof, and, as he picked up the pole near its lower end, the coping acted as a fulcrum and the upper end of the pole was lowered and came near to, or in contact with, the sixty-six hundred volt distributing line, as a result of which the respondent sustained the burns and other injuries on which he bases this action for damages.

■■ Appellants first contend that the charge of negligence was not sustained, as the construction was in accord with standard engineering practice, no statute was violated by the construction and maintenance of the distributing line in such close proximity to the theatre building, and there was no breach of the rule as to the care to be exercised by an electric company respecting its wires.

The care to be exercised by an electric company with respect to its wires is such as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise under the circumstances in order to prevent injury.

''While the measure of duty resting upon electric companies in order to exonerate them from liability for negligence is expressed by the courts in forms varying

from reasonable or ordinary care and diligence, to a close approximation to the view that they are insurers, yet the generally accepted rule in such cases, as in determining liability for negligent injuries generally, is that such companies are bound to use reasonable care in the construction and maintenance of their lines and apparatus; that is, such care as a reasonable man would use under the circumstances, and will be responsible for any conduct falling short of this standard. The degree of care which will satisfy this requirement varies, of course, with the danger which will be incurred by negligence, and must be commensurate with the danger involved, and, according to numerous decisions, where the wires maintained by a company are designed to carry a strong and powerful current of electricity, so that persons coming in contact with them are certain to be seriously injured, if not killed, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its plant, to prevent such injury." 9 R. C. L. 1199.

"Electric companies are . . . bound to use reasonable care in the construction and maintenance of their lines and apparatus, that is, such care as a reasonable man would use under the circumstances, and will be responsible for any conduct falling short of this standard. It follows from this rule, that the amount of care necessary varies with the danger which is incurred by negligence, for a prudent and reasonable man increases his care with the increase of danger. If but little danger is incurred, as, for instance, when the wires carry only a harmless electric current, such, for instance, as the telegraph or telephone current, only ordinary care may be required. While if the wires carry a strong and dangerous current of electricity, so that negligence will be likely to result in serious accidents, and perhaps death, or if a harmless wire is in dangerous proximity to a high tension wire, a very high degree of care, indeed, the highest that human prudence is equal to, is necessary. This is particularly true of electric light and electric railway wires, which carry a high tension current often of great danger. The rule

is thus stated in a case in Massachusetts. 'The vigilance and attention required must conform to the nature of the emergency and the danger to which others may be exposed, and is always to be judged of according to the subject-matter, the danger and force of the material under the defendant's charge.' The question of whether or not reasonable care has been used is in all cases for the jury, except where the court, on undisputed facts, can say that no reasonable man would have acted in the manner complained of, or that a reasonable man must have acted in the manner complained of. Between these limits the whole question is for the jury. Furthermore, as in all actions for negligence the question of the conduct of the plaintiff is involved, and if he has been guilty of contributory negligence, that is, of conduct which a reasonable and prudent man would not have adopted under the circumstances, and this conduct has contributed directly to his injury, he cannot recover therefor.'' Croswell, Law of Electricity, § 234, pp. 205, 206.

In enunciating the rule as to the care to be exercised respecting the construction and maintenance of electric lines, we said, in *Graves v. Washington Water Power Co.*, 44 Wash. 675, 87 Pac. 956, 11 L. R. A (N. S.) 452:

''Ordinarily a person whose duty it is to furnish protection to others against a dangerous agency fully complies with the law when he provides such a protection as will safely guard against any contingency that is reasonably to be anticipated. He is not legally bound to safeguard against occurrences that cannot be reasonably expected or contemplated as likely to occur.''

Where death or serious injury may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.

''It may be stated as a general principle of law that one who has in his possession or under his control an instrumentality exceptionally dangerous in character

is bound to take exceptional precautions to prevent an injury being done thereby. The law exacts of one who puts a force in motion that he shall control it with a skill and care proportioned to the danger created. A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk of injury to persons or property. While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say, in general terms, that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken." 20 R. C. L. 51.

As stated in the annotations, 14 A. L. R. 1024:

"While the terms of stating the measure of duty of the electric company are different, there is a great uniformity in the decisions to the effect that one maintaining a high tension electric transmission line without proper insulation, at places where workmen are likely to come into contact with it to their injury, is liable for the injury."

In *Thomas v. Wheeling Electrical Co.*, 54 W. Va. 395, 46 S. E. 217, the defendant was held liable in an action by the plaintiff to recover for injuries sustained by coming in contact with an *uninsulated* electric wire strung over a balcony where plaintiff was working.

In *Giraudi v. Electric Improvement Co.*, 107 Cal. 120, 40 Pac. 108, 48 Am. St. 114, 28 L. R. A. 596, where a hotel employee was injured by coming in contact with electric wires while on the roof assisting his employer in securing signs during a violent storm, the company was held liable for its failure to raise the wires so high above the roof that those having occasion to go there would not come in contact with them; that the failure to so cover the wires that there was no danger in coming in contact with them constituted negligence. The court said:

"The mere fact that some persons use a dangerous agency raises no presumption that the public know enough of its nature to avoid the danger which must arise from its use, and the public—aside from the consumers using the commodity—owe no duty to those introducing it; but, on the other hand, it is the duty of those making a profit from the use of so dangerous an element as electricity to use the utmost care to prevent injury to any class of people composing the public which exists in any considerable numbers. They must protect those possessing less than ordinary knowledge of the character of the commodity."

The defendant in *McLaughlin v. Louisville Electric Light Co.*, 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812, was held liable to a painter on a house who came in contact with an *imperfectly insulated* wire. The court observed that the insulation of wires maintained at *places where people have the right to go for work,* business or pleasure, *should be made perfect,* and the utmost care used to keep it so, and the fact that it is expensive or inconvenient is no excuse. To the same effect is *Lewis v. Louisville Electric Light Co.*, 21 Ky. L. Rep. 34, 50 S. W. 992, on similar facts.

In *Brown v. Edison Electric Illuminating Co.*, 90 Md. 400, 45 Atl. 182, 46 L. R. A. 745, 78 Am. St. 442, it was held that a *prima facie* presumption of negligence on the part of an electric light company arises from an injury to a boy while cleaning a small roof over a window, just below a second-story window, by coming in contact with the point of a dangerously charged wire left sticking up and entirely uncovered, where it was jointed just beyond an insulator, and only a few inches from the roof on which he was working, where there is nothing to show any want of care on his part. The court also held that *an electric light company using wires charged with a dangerous current owes a legal duty,* irrespective of any contractual relation, *toward*

*every person who, in the exercise of a lawful occupation in a place where he has a lawful right to be,* is liable to come in contact with the wires, *to see that its wires are perfectly placed with reference to the safety of such person, and are properly insulated.*

In *McCrea v. Beverly Gas & E. Co.,* 216 Mass. 495, 104 N. E. 365, it was held to be negligence on the part of the company *to fail to insulate* or take extraordinary precautions with respect to high-voltage wires passing over premises near trees in which persons, to the knowledge of the company, were obliged to work in exterminating moths, pursuant to ordinance.

In *Geismann v. Missouri-Edison Elec. Co.,* 173 Mo. 654, 73 S. W. 654, the court said:

"Electricity is one of the most dangerous agencies ever discovered by human science, and owing to that fact it was the duty of the electric company to use every protection which was accessible to insulate its wires at all points where people have the right to go, and to use the utmost care to keep them so; and for personal injuries to a person in a place where he has a right to be without negligence upon his part contributing directly thereto, it is liable in damages."

In *Winkelman v. Kansas City Electric Light Co.,* 110 Mo. App. 184, 85 S. W. 99, the court said, in holding that an electric company maintaining wires alongside of a building owes to a person on a scaffold, repointing the wall, the duty to use the utmost care thoroughly to insulate the wires and to keep them so insulated:

"For, considering the noiseless, hidden and destructive power of electricity, a reasonable effort to control it is nothing short of the utmost effort—nothing less than the utmost would be a reasonable effort."

In *Williams v. City of Fulton,* 177 Mo. App. 177, 164 S. W. 247, the defendant was held liable for injury

to a person coming in contact with a live electric wire while walking along the gutter of a roof.

In *Brooks v. Consolidated Gas Co.,* 70 N. J. L. 211, 57 Atl. 396, in holding the company liable where one was killed by coming in contact with a defectively insulated wire while painting the gutter of a balcony, the court said:

"When it placed its converter in the position indicated, it was bound to consider and foresee the possibility, and the probability, of some one, using the balcony for pleasure, or for working thereon, coming in contact with the wires and receiving injury thereby, and to take such precautions as might be reasonably taken against such results. This duty it owed to every person lawfully using the balcony. Whether the company did take such precautions and exercise such care as the circumstances demanded, was plainly a question for the jury."

In *Yeager v. Edison Electric Co.,* 242 Pa. 101, 88 Atl. 872, the plaintiff, while painting a city building, came in contact with one of the defendant's wires, resulting in his receiving a severe electric shock which caused permanent injury. In holding the defendant liable therefor, the court said:

"Prudence requires those in control of a deadly current of electricity to exercise the highest degree of care in protecting the wires at points where persons in the course of their lawful employment are liable to come in contact with them. It appears from the evidence that the insulating material used in this case, was such as is ordinarily used upon the wires when hanging in the air, and out of ordinary reach. It by no means follows that insulation of this character is reasonably safe for use upon wires at points where they enter buildings or where it may reasonably be expected that persons in the discharge of duty may accidentally come in contact with them. The trial judge apparently made no distinction between the danger to be apprehended from the wires when hanging in the air out of ordinary reach

and that which should properly be anticipated at such a point of proximity as this. Insulation that may be sufficient at one place, may not constitute proper protection against danger from the wires at another. As we said in *Fitzgerald v. Edison Electric Illuminating Co.*, 200 Pa. 540 [50 Atl. 161, 86 Am. St. 732]: 'The company, however, which uses such a dangerous agent is bound not only to know of the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them. . . . The duty is not only to make the wire safe by proper insulation, but to keep it so by constant oversight and repair.' "

See, also, *Rucker v. Sherman Oil & Cotton Co.*, 29 Tex. Civ. App. 418, 68 S. W. 818; *Runyan v. Kanawha Water & Light Co.*, 68 W. Va. 609, 71 S. E. 259, 35 L. R. A. (N. S.) 430.

While it frequently becomes desirable, in the maintenance of an electric lighting system, to run a wire close to a building or to fasten it to the side of a building, and, in the absence of statute or municipal ordinance, forbidding the maintenance of wires in that manner, the practice is not denounced by law, nevertheless the company must remember that other persons, in the pursuit of business, are likely to work or be near the side of the structure, from which it follows that care must be exercised with regard to the insulation of a wire so located. Curtis, Law of Electricity, § 513, p. 773.

"An electric company must expect that persons will sometimes go upon the roof of buildings for pleasure and business, and it must therefore exercise due care to see that its electric wires over or near to the roof are properly insulated so that injury will not result to a person lawfully upon the roof. Thus, if a workman employed to repair the roof or to do other work on or near the roof comes in contact with a defectively insulated electric wire and receives an injurious shock of

electricity, the company will generally be required to respond in damages." Curtis, Law of Electricity, § 515, p. 776.

Supplementing the annotations in 14 A. L. R. 1024, are the following decisions to the effect that one maintaining a high tension electric transmission line without proper insulation at places where workmen are likely to come into contact with it to their injury, is liable for the injury: *Fike v. San Joaquin Light & Power Corp.,* 73 Cal. App. 712, 239 Pac. 344; *Anderson v. Southern California Edison Co.,* 77 Cal. App. 328, 246 Pac. 559; *Howell v. San Joaquin Light & Power Corp.,* 87 Cal. App. 44, 261 Pac. 1107; *Southern Colorado Power Co. v. Pestana,* 80 Colo. 375, 251 Pac. 224; *Rome R. & L. Co. v. Jones,* 33 Ga. App. 617, 127 S. E. 786; *Pattock v. St. Cloud Pub. Serv. Co.,* 152 Minn. 69, 187 N. W. 969; *Choka v. St. Joseph R. L. H. & P. Co.,* 303 Mo. 132, 260 S. W. 67; *Johnson v. Kansas City Elec. Light Co.,* 232 S. W. (Mo. App.) 1094; *Lofty v. Lynch-McDonald Constr. Co.,* 215 Mo. App. 163, 256 S. W. 83; *Burrows v. Livingston-Niagara Power Co.,* 217 App. Div. 206, 216 N. Y. Supp. 516 (affirmed in 244 N. Y. 548, 155 N. E. 892); *LaBounty v. Defiance Gas & E. Co.,* 21 Ohio App. 154, 153 N. E. 88; *Minnesota Electric L. & P. Co. v. Hoover,* 102 Okla. 270, 229 Pac. 285; *Mirnek v. West Penn Power Co.,* 279 Pa. 188, 123 Atl. 769; *Oil Belt Power Co. v. Touchstone,* 266 S. W. (Tex. Civ. App.) 432; *Appalachian Power Co. v. Hale,* 133 Va. 416, 113 S. E. 711; *Appalachian Power Co. v. Mitchell,* 145 Va. 409, 134 S. E. 558; *Dansbery v. Northern States Power Co.,* 188 Wis. 586, 206 N. W. 882.

It is the rule that, where the evidence is such that reasonable men might fairly differ as to whether appellants exercised reasonable care to guard against

injury, the question is one for the jury. 20 R. C. L. 166.

Applying the foregoing principles to the facts in the case at bar, it is clear that the evidence was sufficient to sustain the charge of negligence, and that the appellants have no cause to complain of the submission to the jury of the question as to whether the appellants exercised reasonable care to guard against the injury.

The next question is whether the respondent was guilty of contributory negligence as a matter of law; that is, did the respondent neglect the duty imposed upon all men to observe ordinary care?

Upon an issue as to contributory negligence, where there is evidence and inferences to be deduced therefrom by which reasonable men may arrive at different conclusions, contributory negligence is a question for the jury. In passing upon that question, we must accept as true that view of the evidence most favorable to the respondent. *Bryant v. Hartford Eastern Ry. Co.*, 158 Wash. 389, 290 Pac. 874.

"In but two classes of cases may the question of negligence be determined by the court as a conclusion of law: (1) Where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances; (2) where the facts are undisputed and but one reasonable inference can be drawn from them. *McQuillen v. Seattle*, 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799. See, also, *Burian v. Seattle Electric Co.*, 26 Wash. 606, 67 Pac. 214; *Anderson v. Pacific National Lumber Co.*, 60 Wash. 415, 111 Pac. 337.

"And where the minds of reasonable men may differ, the legal sufficiency is for the jury." *Bell v. Northwest Cities Gas Co.*, 164 Wash. 450, 2 P. (2d) 644.

In determining the question of contributory negligence, due care or ordinary prudence under the cir-

cumstances is the only test. *Helliesen v. Seattle Elec. Co.,* 56 Wash. 278, 105 Pac. 458; *North Coast P. Co. v. Cowlitz, C. & C. R.,* 108 Wash. 591, 185 Pac. 615. The existence of contributory negligence must be judged by respondent's condition and surroundings at the time of the accident, and whether, under the circumstances, he acted as a reasonably prudent man would have done.

"After an accident happens it is always easy to see many ways by which it could have been avoided, but such considerations do not usually afford a correct test of negligence. A victim of an accident is entitled to have his conduct judged by the circumstances surrounding him at the time of the accident—by the conditions as they appeared to one in his then situation—and if his conduct when so judged appears to be that of a reasonably prudent person, he cannot be said to be guilty of negligence." *Hull v. Seattle, Renton & Southern R. Co.,* 60 Wash. 162, 110 Pac. 804.

Ordinarily, the question of contributory negligence is for the jury. A court will determine the question only when but one reasonable conclusion can be reached from a given state of facts. The facts in the case at bar obviously preclude the application of the exception to the rule requiring the submission to the jury of the question of contributory negligence.

Respondent detached the pole from the roof and rested one end of it on the coping. It was his intention to lower the pole, with a rope, into the alley. He walked to the coping to ascertain whether there was aught to obstruct or hinder such disposition of the pole. When he got to the coping and looked over and down, he noticed for the first time the uninsulated wires. Realizing the danger of contact with the wires if he attempted to lower the pole at that point, respondent decided to lower it elsewhere. With that purpose in view,

". . . as the wires go slaunch-wise through that alley, and this coping isn't near as high either and the wires further away, I could take the pole over there and lay it over sideways and let it down. . . . Toward the other end of the building . . ."

the respondent "walked back a little bit" when he reached down to pick up the pole. As he picked up the pole, the coping acted as a fulcrum, and the upper end of the pole was lowered. Whether it came in contact with the wire, whether the wind swayed the wire until it came in contact with the pole, or whether the pole came so close to the wire that the electric current was transmitted to the pole, is not known. The only testimony, that of the respondent, was that, as the pole was lifted, the electricity traveled through the iron pole and injured him.

It would have been as easy and doubtless less dangerous—and it may have been the intention of respondent—to take hold of the lower end of the pole and drag it to a place of safety. To have done so without lifting the lower end of the pole more than an inch from the floor of the roof, or to have stood by the coping and endeavored to push the pole backward, might have avoided the accident. Little acquaintance with the law of physics would have caused one to refrain from grasping the lower end of the pole and thus lower the upper end to closer proximity to the wires, the danger of contact with which the respondent well knew. It may be argued that no exigency was present calling for immediate removal of the pole when respondent recognized the perilous situation. However, as we said in *Hull v. Seattle, Renton & Southern R. Co.,* *supra,*

"After an accident happens it is always easy to see many ways by which it could have been avoided, but such considerations do not usually afford a correct test of negligence."

We cannot hold that, having used a method more dangerous than another open to him as described above, for removing the pole, the respondent was guilty of contributory negligence as a matter of law, unless we can say—and we cannot—that the dangers of the method adopted were so manifest that a prudent person under the same circumstances would not have made such a choice.

As aptly said in *Interstate Power Co. v. Thomas*, 51 Fed. (2d) 964, 84 A. L. R. 681:

"No rule could be laid down as to what an ordinary prudent person would do in the situation presented to plaintiff. Subsequent developments show he did the unwise thing. The trial court in passing on the motion for new trial discussed the situation as follows: 'My own impression is that what Mr. Thomas did was an imprudent thing; that he took unwarranted chances; that he selected a way of extracting himself from a difficulty which involved unnecessary risk; but I did not think that what he did was so conclusively negligent as to justify me in withholding the case from the jury. Had Mr. Thomas been dealing with a situation involving dangers and hazards with which all of us are familiar and had he selected an obviously hazardous way out of his trouble, when there was a safe way, there would have been no doubt as to his carelessness.'

"When a court assumes to say that reasonable men in exercising their fair and impartial judgment could not differ on a question of fact such as is here presented, it should be very sure of its ground. A layman's opinion on a question of fact may be fully as reasonable as a court's opinion. Where reasonable men may fairly differ in their conclusions from the evidence as to a question of fact, the solution thereof is for the jury. As to whether plaintiff acted as a reasonably prudent man under all the circumstances is a question on which a sharp diversity of opinion might well exist. To have held here as a matter of law that plaintiff was guilty of contributory negligence would in our judgment have usurped the province of the jury, and the trial court was right in not so holding. In *Cary Broth-*

*ers & Hannon v. Morrison,* 129 F. 177, 181, 65 L. R. A. 659, this court said: 'The question of contributory negligence, like every other question of negligence, is ordinarily for the jury; and it is only when there is no substantial conflict in the evidence which conditions it, and when, from the undisputed facts, all reasonable men, in the exercise of a fair judgment, would be compelled to reach the same conclusion, that the court may lawfully withdraw it from them.' "

█ Assignments of error respecting the giving of instructions Nos. 2, 9 and 10 and the refusal to give proposed instructions Nos. 1 and 2 are not entitled to consideration, as only a portion of instruction No. 2 and a part of instruction No. 10 are set forth in the brief, and instruction No. 9 and the two proposed instructions are not set forth in the brief. *Lund v. Seattle,* 163 Wash. 254, 1 P. (2d) 301.

The other assignments of error are without substantial merit.

The judgment is affirmed.

BEALS, C. J., MAIN, and MITCHELL, JJ., concur.

STEINERT, J. (concurring in the result)—Had it been shown that respondent's act of removing the pole from the coping caused it to *come into contact* with the wire, I would be of the opinion that respondent was guilty of contributory negligence, because, knowing of the danger, he deliberately did the very thing that caused him to receive the electric shock. But the evidence does not show that. It does not show that a contact was caused solely by respondent's maneuver of the pole. It may have been, as stated in the majority opinion, that the wind swayed the wire until it came in contact with the pole as respondent was endeavoring to remove it. It may also have been that, in lifting the pole, but still endeavoring to obviate actual contact, respondent unwittingly brought the end of it

close enough to the wire to permit the current to jump the short intervening space. Under either of such circumstances, it could not be said, *as a matter of law,* that respondent was guilty of contributory negligence. It would then be a question for the jury to determine, taking into consideration all the facts and circumstances surrounding respondent's acts.

I therefore concur in the result.