[No. 24759-0-I.   Division One.   August 6, 1990.]

CLIFFORD S. WINFREY, ET AL, *Respondents,* v. ROCKET RESEARCH COMPANY, *Appellant.*

*Jeffrey I. Tilden,* for appellant.

*Ronald J. Bland* and *David S. Vogel,* for respondents.

WEBSTER, J.—Rocket Research Company appeals a $1.1 million judgment in favor of Clifford Winfrey. Winfrey sued Rocket Research for personal injuries sustained while working as an independent contractor at a Rocket Research plant. On appeal, Rocket Research contends (1) that it owed no duty to Winfrey and (2) that the trial court gave an improper jury instruction regarding the standard of care. We affirm.

## FACTS

Rocket Research received electrical power for its manufacturing complex via a primary distribution system. Rather than having a utility company supply low voltage electricity, energy entered the Rocket Research facilities at a potential of 12,500 volts. In a power room of a Rocket Research building, the company maintained transformers and other high voltage equipment to convert the energy to lower, usable voltages. The power room, which was usually kept locked, contained two rows of panels housing meters, circuit breakers, and fuses. One row handled 12,500 volts, while the other handled only 480 volts. Although the voltage in each row was considerably different, both rows of panels appeared similar, displaying identical warning signs: "Danger. High Voltage."

Winfrey, a journeyman electrician, was a partner of Linder Electric, an independent contracting firm, and had been employed by Rocket Research on several occasions to install electrical equipment. Winfrey's qualifications enabled him to install and service systems handling a maximum of 480 volts. Whenever Linder Electric contracted to service high voltage systems, it retained Cliff Nordlinder, a high voltage specialist.

In January 1987, while Winfrey was installing a 110–volt system in a Rocket Research laboratory, an employee of Rocket Research asked him to perform an electrical task unrelated to the project on which Winfrey was working. The employee mistook Winfrey for Cliff Nordlinder, the high voltage specialist, because the two men had the same first name. The employee requested Winfrey to obtain part numbers from "low voltage fuses in a high voltage cabinet" in the power room. In fact, however, the fuses conducted high voltages. Although Winfrey had entered the power room to disconnect the electricity while installing equipment on a previous project, he was unaware that the power room contained devices handling more than 480 volts. The employee admitted Winfrey into the locked room and directed him to a panel containing the fuse. Winfrey opened the panel but could not read the numbers on the fuse. The Rocket Research employee then obtained a mirror and gave it to Winfrey so as to view the hidden side of the fuse. Holding the mirror, Winfrey extended his right arm into the panel, not knowing that it was energized with 12,500 volts. This drew an electric arc; the powerful discharge of current destroyed his right arm, and much of the use of his left arm.

Winfrey and his spouse brought this suit against Rocket Research alleging negligence. A jury returned a verdict in favor of Winfrey, and the court entered judgment in August 1989.

### DUTY OWED BY ROCKET RESEARCH

Rocket Research argues that it owed no duty to Winfrey because (1) Winfrey was an employee of an independent contractor, and (2) as an electrician, Winfrey knew of the hazards associated with electrical work. We do not accept Rocket Research's position.

■ Rocket Research relies on the theory that because Winfrey was an independent contractor, it cannot be liable for his workplace injuries. Rocket Research is correct that at common law, an employee of an independent contractor

is not owed a duty by a general contractor except in certain circumstances. *See Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 582 P.2d 500 (1978). However, Rocket Research fails to acknowledge that completely apart from the question of vicarious liability is the duty to prevent injuries to invitees on a premises caused by the owner's own negligence.

> The owner of a premises owes to the servant of an independent contractor, employed to perform work on that owner's premises, the duty to avoid endangering him by the owner's own negligence.

*Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 707, 575 P.2d 215 (1978) (citing *Epperly v. Seattle,* 65 Wn.2d 777, 785, 399 P.2d 591 (1965)); *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 71, at 510 (5th ed. 1984). The landowner "owes the same duty of care to the on–premise servants of another master as he owes to his own employees." *Lamborn,* 89 Wn.2d at 707. Under this theory, the landowner must keep the premises reasonably safe and warn of dangers which are not readily apparent but are known to or discoverable by the owner with the exercise of reasonable care. *Lamborn,* 89 Wn.2d at 708; *see also Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 94–95, 549 P.2d 483 (1976). Rocket Research owed a duty to Winfrey to maintain reasonably safe premises and to warn of dangerous conditions not readily apparent.

The evidence presented at trial supports the conclusion that the power room contained equipment with high levels of danger that was not readily apparent. The proof showed that the intensely hazardous 12,500–volt panels were not clearly distinguishable from the low voltage panels. Additionally, Winfrey's status as a journeyman electrician did not render safe this otherwise unsafe condition. Expert testimony established that the lack of warning labels distinguishing the high voltage panels was misleading even to an electrician. High voltage experts receive different training and conduct their work much differently than a low voltage

electrician. One expert explained, for example, that a clearance of at least 2 feet must be maintained when working with 12,500 volts to prevent the worker or the worker's equipment from drawing an electric arc. Lower voltages do not jump in the same manner. According to another expert, had the voltage been 480, Winfrey would have probably suffered only minor injuries. Thus, the evidence supported the theory that the high voltage equipment presented a far more dangerous condition than did the low voltage panels. Rocket Research had a duty to at least warn individuals admitted into the power room of this extreme hazard.

Moreover, aside from its duty to warn of latent dangerous conditions, other evidence suggested that Rocket Research may have committed other negligent acts. Winfrey was asked to obtain part numbers from "low voltage fuses"—a misstatement of a highly important fact. Testimony also showed that the Rocket Research employee mistook Winfrey for another man who was qualified to work near high voltage devices.

### DEGREE–OF–CARE INSTRUCTION

■ Next, Rocket Research takes issue with a jury instruction that read:

> the owner or operator of a power room housing high voltage electrical equipment owes a duty to those asked to work in close proximity to such equipment to exercise the highest degree of care for their safety.

Numerous cases have held that electric companies maintaining high voltage equipment must exercise the highest degree of care to avoid injuries. *See Scott v. Pacific Power & Light Co.,* 178 Wash. 647, 35 P.2d 749 (1934), and the line of cases following it. Rocket Research argues that these cases are factually distinguishable since they all involve public utilities that have injured members of the public. This is a distinction without a difference.

Rocket Research has provided no authority holding that the status of the parties involved is the decisive factor when

determining whether to enhance the degree of care.[1] Rather, the determination depends primarily upon the extent of the dangerousness of the instrumentality involved. As stated in one case:

> [T]he amount of care necessary varies with the danger which is incurred by negligence, for a prudent and reasonable man increases his care with the increase of danger. If but little danger is incurred, as, for instance, when the wires carry only a harmless electric current, . . . only ordinary care may be required. While if the wires carry a strong and dangerous current of electricity, so that negligence will be likely to result in serious accidents, and perhaps death, . . . a very high degree of care, indeed, the highest that human prudence is equal to, is necessary.

*Brashear v. Puget Sound Power & Light Co.,* 100 Wn.2d 204, 210, 667 P.2d 78 (1983) (highest degree–of–care standard does not apply where injury caused by merely 120 volts) (quoting *Vannoy v. Pacific Power & Light Co.,* 59 Wn.2d 623, 632, 369 P.2d 848 (1962)).

> Under the rule enunciated in *Scott,* the standard of care varies according to the danger posed by the utility's activity. If the danger is minimal, the utility is held to conventional negligence concepts. But when the danger and the likelihood of injury is increased, the standard of care rises.

*Keegan v. Grant Cy. PUD 2,* 34 Wn. App. 274, 279, 661 P.2d 146 (1983). In *Brashear,* the court analyzed several cases in which the highest degree–of–care standard applied and looked primarily to the amount of voltage involved. Among those cases was *Scott,* where the injuries were caused by 6,600 volts—nearly one–half the electrical force involved here. 178 Wash. at 649. The above authorities dictate that when the dangers involved are sufficiently acute, the enhanced degree–of–care instruction is appropriate. That is the case here. We are particularly impressed by the

---

[1]We are not alone in holding that a manufacturer, not in the business of supplying electricity, that maintains high voltage transmission equipment should be held to an enhanced standard of care. *See Beary v. Container Gen. Corp.,* 368 Pa. Super. 61, 533 A.2d 716 (1987) (suit against tank manufacturer by employee of independent contractor injured by overhead high voltage wires; jury properly instructed that increased degree of care is necessary where risk of injury is greater).

tremendous destructive power of the high voltages contained in the Rocket Research power room. Rocket Research owned and operated transformers, meters, fuses, and other equipment—all of which handled dangerous high voltages. The substantial hazard created by this equipment demands that the operator exercise the highest degree of care. The jury was properly instructed.

We affirm the judgment.

GROSSE, A.C.J., and SWANSON, J., concur.

Review denied at 115 Wn.2d 1030 (1990).