[No. 3979. Decided December 14, 1901.]

GOTTLIEB BURIAN, *Appellant,* v. SEATTLE ELECTRIC COMPANY, *Respondent.*

STREET RAILWAYS — PERSONAL INJURIES — NEGLIGENCE — QUESTION FOR JURY.

Whether a cable car company engaged in operating a line upon a steep street is guilty of negligence or not, where the cars could only be safely stopped upon the level of cross streets and not upon the incline, and by reason of that fact a pedestrian upon the cross street was run into and injured because of the failure of the company's employees to stop the car until it had completely ascended from the slope to the level of the cross street, is a question for the jury, and it is not within the province of the court to say as a matter of law that the company was not negligent in operating such cars.

SAME — NON-SUIT.

In an action to recover for injuries resulting from being run down by a cable car, where there is some evidence that no gong was rung, it was error to non-suit plaintiff, since it became the duty of the jury to determine what the fact was as to sounding the gong, and whether a failure to sound it constituted negligence under all the facts of the case.

SAME — CONTRIBUTORY NEGLIGENCE.

Whether a pedestrian upon a street crossing waiting for a street car to pass is guilty of contributory negligence in turning to cross a double track on which cars run in the opposite direction, without looking or listening to learn whether a car is approaching, is a question for the jury, where he is injured by a car coming suddenly over the top of the hill upon which he was walking, there being evidence that its gong was not sounded, and that the car was not stopped as quickly as it should have been.

Appeal from Superior Court, King County.—Hon. G. MEADE EMORY, Judge. Reversed.

. *Edward Holton James* and *J. Henry Denning,* for appellant.

*Struve, Allen, Hughes & McMicken,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—The respondent is the owner and operator of a system of street railways in the city of Seattle, and on the 11th day of November, 1900, was engaged in the operation of a line of cars along Madison street, in said city. The westerly end of Madison street is near the waters of Puget Sound, from which point said street proceeds in a northeasterly course, and ascends, for a distance of many blocks, the sloping side of a very high hill. The respondent's cars are moved up and down the slope of said hill along Madison street by means of an underground cable. Madison street is crossed at right angles by the following parallel streets, among others, viz., Second avenue, Third avenue, and Fourth avenue. Those portions of Madison street included in its intersections with said streets at their several places of crossing are practically level, while those portions which lie between said intersections ascend the hill by a very steep grade. Of the streets crossing Madison street above named, Second avenue is the most westerly, and is nearest the westerly end of Madison

street. Next easterly, and up the hill, from Second avenue, lies Third avenue, which crosses Madison street one block distant from the crossing of Second avenue and Madison street. Ascending the hill from Third avenue, Madison street proceeds until it intersects Fourth avenue, one block distant. On the day first above named appellant resided at Spring Place in the city of Seattle, which is located adjoining Madison street, some distance easterly from that portion of Madison street heretofore described. In the evening of that day appellant started with his family to go to Germania Hall, which is located on Second avenue, and to the north of Madison street. The party walked along Madison street to the westward, following the northerly side of said street until they reached Fourth avenue, when they crossed to the southerly side of Madison street, and proceeded along that side of the street down to Third avenue. They crossed over Third avenue, and appellant's wife and daughter and a young lady who accompanied them stood upon or very near the sidewalk at the southwesterly corner of the two streets. Appellant started to cross over Madison street, intending to proceed northerly along Third avenue to Seneca street, and thence down Seneca street to Second avenue, and to Germania Hall. As he started across Madison street he proceeded in a diagonal direction with reference to the square formed by the intersection of the two streets. He went in a northeasterly direction until he was some twenty or twenty-five feet from the westerly line of Third avenue, and was also near the center of Madison street. At this point in Madison street are the double tracks of the Madison street cable line. The northerly track is used by the cars going westerly toward the foot of Madison street and toward Puget Sound. The southerly track is used by those going easterly toward Lake Wash-

ington.   Crossing the above tracks at said street crossing
are also the double tracks of an electric line proceeding
along Third avenue.   A car on the Madison street line had
just come from Lake Washington, and had stopped at the
Third avenue crossing.   Appellant, from the position above
described, stood in the space between the two tracks of the
Madison street line and a little in front of and facing said
car.   He was therefore facing toward the northeast, and
stood with his back to the Madison street hill between Sec-
ond and Third avenues.   While standing there he observed
that his family had not followed him, and he turned to go
back to where they stood, as above described.   He did not
turn to the westerly, and look down the Madison street hill,
but turned to the right, with his face to the east, and then
to the south, and started across the southerly track of the
Madison street line.   While in the act of crossing this
track, he was struck by a Madison street car, which had
just come up the hill from the direction of Second avenue.
He received serious and substantial injuries.   Appellant
was familiar with the surroundings of the locality and with
the manner of operating the Madison street cars.   At the
trial witnesses testified that they did not hear a gong
sounded from the car as it ascended the hill and as it ap-
proached and entered upon Third avenue, but, owing to
their excited condition of mind at the time of the accident,
they were unable to testify that the gong was not in fact
sounded.   One witness, however, did testify positively to
the fact that no gong was sounded from the car at any
time as it approached the crossing.   At the close of appel-
lant's testimony the respondent challenged the legal suf-
ficiency of the evidence to entitle the appellant to a ver-
dict, and moved the court to find as a matter of law that
the verdict should be returned in favor of respondent, and
also to discharge the jury and enter judgment accordingly.

This motion was granted by the court, and judgment was entered that appellant is not entitled to recover in this action against respondent, and that respondent recover its costs. From said judgment this appeal was taken.

It is insisted by respondent that the car which ascended the Madison street hill, being propelled by a cable, could not with safety to its passengers, be released from the cable until the car had cleared the incline of the hill, and stood upon the level of the Third avenue crossing. The grade of the hill between Second and Third avenues is about twenty per cent., and it is urged that it would be hazardous if a gripman should release the car from the cable at any point on the incline, since it might not be possible by means of brakes to prevent the car from retreating down the hill. The car was apparently stopped as quickly as possible after it reached the level of the Third avenue crossing, but before it had safely landed upon the level its front end reached the point where appellant was crossing the track, and struck him. The speed of the car could not be checked, since it must follow the speed of the running cable at that point. Respondent concludes from the above stated conditions that no negligence can be attached to it for not checking the speed, or for not sooner stopping the car. We are not at this time prepared to say as a matter of law that respondent's rights are such as may authorize it to maintain a system of operating cars that will prevent it from safely stopping the cars at any point within the distance of an entire block, or at a point where they are in the act of entering upon the level of a street crossing. Respondent's rights in the street are in common with those of other travelers. Street cars are, in the main, governed by the same rules as other vehicles on the street, and their owners have an equal right with the traveling public to use the street. They have no proprietary right to any part of the

street.   There are some modifications of this rule.   For example, as street cars run upon a track they cannot turn out to one side of it.   But there is no exception which relieves a street railway company from exercising as much care to avoid collisions with other vehicles as the drivers of the latter are required to exercise in order to avoid collision with the cars. *Shea v. St. Paul City Ry. Co.,* 50 Minn. 395 (52 N. W. 902); *Traver v. Spokane Street Ry. Co.* 25 Wash. 225 (65 Pac. 284).   The obligations of the street railway company and of other travelers along the street are mutual, and each must exercise care to prevent collisions and accidents.   This mutual obligation is as binding between the operator of the cars and pedestrians at a street crossing as it is between the operator and drivers of vehicles at other points along the streets.   The car track is as much a part of the street as any other portion of the traveled way, and pedestrians have a right to cross the track, and particularly at street crossings they must of necessity cross it.   If the apparatus used in the operation of cable cars renders the street crossing more hazardous to other travelers than under ordinary conditions, then the street car company should take every reasonable precaution to protect the public from that additional danger.   Other travelers having knowledge of these extra hazardous conditions are also under obligation to exercise reasonable care and caution to avoid the danger.   It is not, therefore, within our province to say as a matter of law that no negligence is shown on the part of respondent in the fact that the speed of the car could not be checked, or that it could not be stopped before it reached the point where it did stop.   This is a question to be submitted to the jury, that it may determine whether, under all the surroundings, the conditions which created the facts as stated constituted negligence. *Roberts v. Spokane Street Ry. Co.,* 23 Wash. 325 (63 Pac.

506); *Schulman v. Houston, etc., R. R. Co.,* 36 N. Y. Supp. 439; *Consolidated Traction Co. v. Scott,* 58 N. J. Law, 682 (34 Atl. 1094, 33 L. R. A. 122).

It has already been said that there was evidence to the effect that no gong was sounded by the operator of this car. Of the number of appellant's witnesses who testified, only one testified positively that such was the fact. No other evidence was before the jury upon that subject. Respondent's counsel therefore frankly and honorably concede that for the purposes of this appeal it must be considered that no gong was sounded. It was held in *Towner v. Brooklyn Heights R. R. Co.,* 60 N. Y. Supp. 289, that the car company owes a duty to the pedestrian at a street crossing to give some warning of the approach of the car. Again, the same court held in *Huber v. Nassau Electric R. R. Co.,* 48 N. Y. Supp. 38, that where the plaintiff testified that he saw the car 300 feet away, it was not negligence to fail to ring the gong, since the only object of the ringing of the gong or bell is to apprise travelers of the approach of the car. See, also, *Schulman v. Houston, etc., R. R. Co., supra.* There being some evidence in this case that the gong did not ring, it became the province of the jury to determine what the fact was in that particular, and also whether such failure to ring constituted negligence under all the facts of the case when considered together. *Consolidated Traction Co. v. Scott, supra.* Conceding that the record as it stands shows that no gong was rung, still respondent urges that appellant was so palpably guilty of gross contributory negligence that, as a matter of law, it should be held he cannot recover. It is true, it does not appear that he looked or listened for the approach of a car, and in turning to cross the respondent's track he did not turn in the direction from which he knew a car upon that track must come. It has been held by this court that failure to look or listen

at a street railway crossing does not constitute negligence *per se.* *Roberts v. Spokane Street Ry. Co.,* and *Traver v. Spokane Street Ry. Co., supra.* A distinction is made in those cases between the rule which applies to a street railway crossing and that which applies to the crossing of an ordinary railroad, the reason being that a railroad company has a proprietorship in its right of way, and that a greater degree of care is required at a crossing of its tracks than is required at the crossing of a street railway track, the owner of which has no proprietorship in the street, and has only a right upon the street in common with other travelers thereon. The above distinction is supported by the weight of authority. Following the above named cases, it must be held here that the mere failure of appellant to look or listen was not negligence as a matter of law, but it is a question to be submitted to the jury whether, when considered in connection with all other surroundings in this case, it constituted negligence in fact. The jury might have found that it was appellant's duty, under his peculiar surroundings, which were well known to him, to turn toward the direction from which the car came and look, or that he at least should have listened. Again, they might have found that circumstances and surroundings were such as did not charge him with that duty. Under the record they might also have found that the failure to ring the gong was negligence, and that, if the gong had sounded the alarm, appellant might have heard it in time to have protected himself. These are questions which, we think, must be submitted to the jury. Under our system of jurisprudence the jury is constituted the functionary which must pass upon these questions of fact. It is not a question of what may be our individual opinions as to the facts shown by the record. The law casts that duty upon the jury as a distinct and auxiliary branch of the court, and unless the evidence

shows negligence on the part of appellant as a matter of law, it is his right to have the facts submitted to a jury. This court has held that generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and that it is only in rare cases that the court is justified in withdrawing it from the jury; that there may be cases where the circumstances are such that the standard of duty is fixed and the measure of duty defined by law, and is the same under all circumstances; and again, that the facts may be undisputed, and may be such as prevent more than one reasonable inference being drawn from them. If, however, different results might be honestly reached by different minds, then negligence is not a question of law, but is one of fact for the jury, and before the court will be justified in taking from the jury the question of contributory negligence the acts done must be so palpably negligent that there can be no two opinions concerning them. *McQuillan v. Seattle,* 10 Wash. 464 (38 Pac. 1119, 45 Am. St. Rep. 787); *Steele v. Northern Pacific Ry. Co.,* 21 Wash. 287 (57 Pac. 820;) *Traver v. Spokane Street Ry. Co., supra.* The above principle we believe is sustained by the weight of authority. It has, in any event, become the settled doctrine of this court.

From the views heretofore expressed, it follows that we think the acts charged to appellant here as contributory negligence, when considered with all the facts shown by the record, are not such as must necessarily lead to but one conclusion in the minds of reasonable men. We, therefore, think the court erred in taking the case from the jury and in refusing to grant the motion for a new trial.

The judgment is reversed, and the cause remanded, with instructions to the lower court to grant a new trial.

REAVIS, C. J., and WHITE, FULLERTON, ANDERS, MOUNT and DUNBAR, JJ., concur.