[No. 28295. Department Two. August 23, 1941.]

FRED L. NORMAN *et al., Respondents,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 116 P. (2d) 360.

*The Attorney General* and *Edward S. Franklin, Assistant,* for appellant.

*Dillard & Powell* and *F. M. O'Leary,* for respondents.

SIMPSON, J.—July 21, 1939, Merle F. Norman was injured while burning poison ivy upon land owned by Spokane county. July 31, 1939, he filed a report of the accident with the department of labor and industries. In the report, he claimed that he had received burns while spraying poison ivy, and that the "hose came off burner and sprayed him with gasoline and he caught fire." September 13, 1939, the department rejected his claim for the following reasons:

"(1) For the reason that the claimant at the time of alleged injury was not engaged in work classified as extrahazardous and coming under the compulsory provisions of the Workmen's Compensation Act, and (2) that claimant was an independent contractor and was not including himself or reporting his monthly payroll to the Division of Industrial Insurance."

The workman appealed to the joint board and a rehearing was granted. Before the appeal could be heard, Mr. Norman died, from the effects of his injuries, October 10, 1939.

Thereafter various physicians, nurses, hospitals, and others, who had rendered services to the workman on account of his injuries, care, and funeral expenses, filed claims against the state medical aid fund. These claims were rejected by the supervisor of industrial insur-

ance, whereupon the claimants appealed to the joint board which granted the petition for a rehearing. Hearing was had, and the joint board sustained the action of the supervisor. The claimants then appealed to the superior court. The trial to the court, sitting without a jury, resulted in a judgment reversing the joint board, and requiring it to entertain and allow the claims for the services rendered. The department has presented this appeal. The assignments of error are directed against the court's findings and judgment.

The facts are these: Spokane county owned several lots within the city of Spokane upon which was growing poison ivy or poison oak. The officials in charge of the lots decided to clear them of the poisonous growth and asked Mr. Norman if he could eradicate it. Upon receiving an affirmative answer, an oral contract was entered into which may best be shown by quoting the testimony of C. E. Carey, the county land agent:

"A. In substance the agreement was that this Mr. Merle Norman was to eliminate or eradicate certain poisonous weeds—I presume it was poison ivy or oak —from these County-owned lots for a consideration of $50.00. Q. What conversation did you have with Mr. Norman pertaining to the contract? A. The conversation was that the eliminating of the poisonous weeds was something that I was not familiar with, and I asked Mr. Norman if he understood the risk of getting infection from handling the stuff and working with it that he would be taking. He said he was thoroughly familiar with it and knew exactly how to get rid of it. So I asked him how he would do it and he said 'I'll scorch or burn the leaves so that I won't get infected with it and then I'll grub the roots out with a grubbing hoe or whatever means necessary to get it out.' I again —from my own over-cautiousness with that kind of things, I guess—warned him to be careful about getting an infection. He rather laughed at the idea, said he was familiar with that kind of work as he had done it before. So I told him to clear the land off and make

out his bill and bring it in. I would present it to the Commissioners and he would be paid by the County."

The system which Mr. Norman employed while clearing the ground is not disclosed by the evidence. The only manner shown concerning the method of work is that he used gasoline in the burning process, and that it exploded and injured him.

█ Appellant argues that Mr. Norman was an independent contractor and, as such, did not come under the protection of the industrial insurance act.

The act was amended by § 2, chapter 211, Laws of 1937, p. 1030, Rem. Rev. Stat. (Sup.), § 7674-1 [P. C. § 3469d], to read as follows:

"The term workman within the contemplation of this act means every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his personal labor for any employer coming under this act whether by way of manual labor or otherwise in the course of his employment."

In 1939, the legislature added another amendment, § 2, chapter 41, Laws of 1939, p. 121, Rem. Rev. Stat. (Sup.), § 7675 [P. C. § 3470], which is:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work, by way of trade or business, or who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen, in extra-hazardous work."

Prior to the effective date of the 1937 amendment, an independent contractor could not receive aid from the industrial insurance fund. Since that time, however, such person is entitled to receive compensation if the essence of the work he is performing is his personal labor.

This situation was made more definite by the terms of the 1939 amendment defining the term "employer." By the two amendments, it is clear that anyone, without regard for whom he is working, may come within the protection of the act if he is engaged in an extrahazardous occupation and if his personal labor is the essence of the work being performed.

The question then arises: Was the essence of the work being performed by Mr. Norman his personal labor?

The word "essence" is defined in Ballentine's Law Dictionary, 446, as:

"The gist or substance of anything; the vital constituent of a thing."

Another definition is:

"That without which a thing cannot be itself." *Pittsburgh Iron & Steel Foundries Co. v. Seaman-Sleeth Co.*, 236 Fed. 756.

Appellant has called our attention to the interpretation of an Oregon statute in *Davis v. State Industrial Acc. Commission*, 156 Ore. 393, 64 P. (2d) 1330, 66 P. (2d) 279, 68 P. (2d) 118. A reading of that case, however, does not throw any light upon the subject before us. The statute construed by the Oregon court is unlike ours, and the facts relative to the employment were entirely different.

We hold that it was the intention of the legislature to broaden the industrial insurance act, and bring under its protection independent contractors whose personal efforts constitute the main essential in accomplishing the objects of the employment, and this, regardless of who employed or contracted for the work.

Within the terms of the 1937 amendment, Mr. Norman was an employee.

Appellant contends that the workman was not engaged in extrahazardous employment.

The trial court held that the work being performed was extrahazardous and was embraced under the classification of "land clearing," Laws of 1939, chapter 138, p. 388, § 1, Class 1 (1-1), Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471].

*"Clearing land.* The word 'clearing,' as commonly used in connection with land, imports no ambiguity, although its meaning may be enlarged by the parties using it; and so the phrase 'clearing lands' may have different significations in various localities. In timbered lands, in the absence of words of limitation by the parties using it, the term has been held to mean removing therefrom all the timber of every size, but not to include taking out the stumps, while in arid regions, where land must be prepared for irrigation, the clearing of such land has been held to mean not only the removal or destruction of the brush, but the plowing or breaking up of the roots as well." 14 C. J. S. 1198.

*Craig v. Crystal Realty Co.*, 89 Ore. 25, 173 Pac. 322.

Appellant argues that the land clearing as mentioned in the statute, connotes a substantial removal of timber and brush. Its counsel asked the court to take judicial knowledge of land clearing in the state of Washington, which they claim is usually performed with powder, tractors, cables, and donkeys.

There are other ways of clearing land in this state dependent, of course, upon the locality. Some land clearing is accomplished by the cutting of trees and the blasting, pulling, and burning of stumps, some land, covered with sage brush, is cleared by the use of iron rails to which teams of horses are hitched, while other lands are cleared by digging with shovels and grubbing hoes and the burning of debris. Therefore, we cannot assume that the legislature had any definite. method in mind, but rather that it intended to include all methods of land clearing when it mentioned the term "land clearing" in the statute.

In this case, the land belonging to the county was encumbered by poison ivy or poison oak, which gave off an irritant oil rendering it poisonous to the touch. In that condition the land was not usable for any purpose. The only way to place it in a condition for use was to eradicate the vines and roots of the plants. It had to be cleared of these vines and roots in order that it could be put to some useful purpose. It is our opinion that the work was covered by the act and that the workman was engaged in extrahazardous work (employment) at the time he was injured.

The judgment is affirmed.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.

