[No. 31739. Department Two. March 20, 1952.]

ROBERT PINK, *Appellant*, v. RAYONIER, INC., *Respondent*.[1]

*Lester Stritmatter* and *Donn F. Lawwill*, for appellant.

*Lester T. Parker*, for respondent.

FINLEY, J.—This personal injury action was heard by the trial court without a jury. At the close of plaintiff's case, upon motion of the defendant, the court dismissed the lawsuit, holding that it was barred by certain provisions of the workmen's compensation act, and that plaintiff was contributorily negligent and had assumed the risks of his employment.

The facts may be stated briefly as follows: Robert Pink was engaged with his two brothers and his father in a joint logging enterprise. The father was paid on a stumpage basis for pulp logs that were cut and taken from his land by the three brothers. This was his sole participation in the logging activities and the profits or losses therefrom. The logs were sold to Rayonier, Inc., and delivered to its plant at Hoquiam, Washington. Robert Pink owned and operated

[1]Reported in 242 P. (2d) 174.

his own truck, with which he hauled short pulp logs from his father's land to the premises of Rayonier, Inc. He was paid the costs of operating his truck. After stumpage, trucking and other expenses of the logging operation were paid, Robert Pink and his two brothers divided the profits equally. Other than the brothers, there were no workmen. A chain and binder and "cheese blocks" were used to secure loads of pulp logs on Robert Pink's truck for the haul to Rayonier's log dump. At the log dump there was a pond. On one side of it an unloading platform or "parbuckler" was located. The platform, constructed of steel, was approximately eleven feet long (lengthwise of the pond) and about four or five feet across. Its height was three or four inches lower than the bed of a logging truck. An electrically operated drum, equipped with cable straps, or a log sling, was located on or near the platform for unloading the log trucks.

At the time of the accident, logging trucks were being unloaded both at the unloading platform and by a Diesel crane of thirty-thousand-pound capacity. Logs unloaded from trucks by the crane were placed in a stock pile or were dropped into the pond, depending upon the supply of logs in the pond at a given time. Robert Pink was directed to back his truck load of logs up to the unloading platform. At this time, the electrically operated drum and its cables or sling were occupied in disposing of a previous truck load of logs. The short pulp logs on Mr. Pink's truck were loaded crosswise and at right angles to the sides of the truck.

After backing his truck up to the unloading platform, Robert Pink got out of it, loosened the binder on the load chain at the rear end of his truck. The binder, incidentally, is a mechanical device to connect and tighten a heavy chain which encircles a load of logs to hold them in place on a log truck. Mr. Pink, after disconnecting it, threw the binder to one side and stood directly behind his truck, and was about to take hold of and throw the binder chain to one side and out of the way. At that moment, the Diesel crane dropped a load of logs into the pond. Immediately thereafter, the vibration from the logs dropped into the pond

by the crane caused some back logs on the rear end of Robert Pink's truck to "kick out." He tried to get out of the way, but was caught by the displaced falling logs and was crushed against the unloading platform. He was injured severely. It is the contention of Robert Pink that his injuries were caused by the negligence of Rayonier, Inc., or its employees, in the operation of the log-dumping or unloading facilities.

The decisive question in this appeal is whether the "so-called" immunity provisions of Laws of 1929, chapter 132, § 1, p. 325, 327, Rem. Rev. Stat. (Sup.), § 7675 [P.P.C. § 709-1], constitute a bar to Robert Pink's cause of action. The statutory language in question reads as follows:

". . . *Provided, however,* That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extrahazardous employment under this act. . . ."

Under the original industrial insurance act, Laws of 1911, chapter 74, p. 345, a workman, as defined thereunder, who is injured away from the plant of his employer through the negligence of one not in the same employ, may elect to take benefits under the act, or to sue the person causing his injuries. Laws of 1927, chapter 310, p. 813, broadened the option by permitting a cause of action by such a workman, irrespective of whether injury was sustained away from the plant of his employer; that is, if one who was not in the same employ negligently injured a workman covered by the act, the former, or perhaps his employer, was liable in a personal injury action for damages, at the option of the workman. The "so-called" employer's immunity provision was added to the industrial insurance laws in 1929, as indicated heretofore. Its effect was to cancel the above mentioned option to sue a third party tort feasor not in the same employ, "if at the time of the accident" the latter "was in the course of any extrahazardous employment under this act."

In *Koreski v. Seattle Hardware Co.,* 17 Wn. (2d) 421, 135 P. (2d) 860, we held that an employer who complies with

the terms of the workmen's compensation act was immune from suit for negligent injury of an employee of another employer engaged in extrahazardous employment. This was irrespective of the fact that the injured employee in the *Koreski* case could not claim industrial insurance benefits under the act. In that case, the injured employee was president and manager of the Ace Electric Motor Service, Inc. The corporation was engaged in the business of installing and repairing electrical apparatus. The corporation had not paid industrial insurance premiums in connection with the president-manager. He was injured while repairing electrical apparatus at the plant of another employer through the alleged negligence of a workman of the latter third party employer. We held, as mentioned above, that the third party employer was immune from suit by the injured president-manager under the "so-called" immunity provisions of Laws of 1929, chapter 132, § 1, p. 325, *supra,* quoted above.

In *Latimer v. Western Machinery Exchange, ante* p. 155, 241 P. (2d) 925, we recently held that the Western Machinery Exchange, an employer covered and qualified under the industrial insurance act, was immune from suit by Mr. Latimer, a self-employer, injured in the course of extrahazardous activity at the plant of the former, allegedly through the negligence of such employer or workman thereof. In the *Latimer* case, we emphasized the fact that the self-employer, engaged in extrahazardous work, could have qualified for benefits under the industrial insurance act; that it was his responsibility that he had not qualified for benefits under the act.

We believe that the decisions in the *Koreski* and the *Latimer* cases are controlling with respect to Robert Pink's assertion of a right of action against Rayonier, Inc., for the reasons discussed at length in the two cases mentioned.

In the *Latimer* case, we pointed out that one could be an employer, as provided under the act, irrespective of whether such an employer had any employees. In other words, that a self-employer, engaged in extrahazardous

work, is within the definition of "employer" under the act and, by notice to the department of labor and industries and payment of industrial insurance premiums, could avail himself of benefits under the act, "as and under the same circumstances, and subject to the same obligations, as a workman."

In the case at bar, Mr. Pink contends that he was not engaged in extrahazardous work *by way of trade or business*, and consequently, in view of the latter phrase or qualification, that he was not an employer under the act. We do not agree. Mr. Pink was certainly engaged in the logging business. Loading, hauling, and unloading pulp logs falls within the extrahazardous category. Mr. Pink was engaged in the particular activity because of anticipated profits. His was certainly a business relationship. In our opinion, Mr. Pink, appellant, was engaged in the particular logging activity *by way of trade or business.*

Other arguments by appellant in support of the proposition that he was not an employer as contemplated by our industrial insurance statutes were analyzed and commented upon at length in the *Latimer v. Western Machinery Exchange* case. No useful purpose would be served by reptition here.

In view of the fact that we have concluded that the "socalled" immunity provisions of Rem. Rev. Stat. (Sup.), § 7675, provided an immunity from suit available to Rayonier, Inc., in the instant case, it will not be necessary to discuss the questions raised on this appeal relative to contributory negligence and assumption of the risk.

The judgment of the trial court is affirmed.

HILL, HAMLEY, DONWORTH, and OLSON, JJ., concur.