[No. 31739. *En Banc.* June 25, 1953.]

ROBERT PINK, *Appellant,* v. RAYONIER, INCORPORATED, *Respondent.*[1]

[1] Reported in 259 P. (2d) 629.

*Lester Stritmatter* and *Donn F. Lawwill,* for appellant.

*Lester T. Parker,* for respondent.

*Gordon H. Sweany, Carl P. Zapp, A. C. Van Soelen, Arthur Schramm, Skeel, McKelvy, Henke, Evenson & Uhlmann, Clarke, Clarke & Albertson, Jack Hullin, Lycette, Diamond & Sylvester,* and *Martin & Shorts, amici curiae.*

FINLEY, J.—Heretofore, this matter on appeal was argued before Department Two of this court. An opinion disposing of it was filed by the Department on March 20, 1952; 40 Wn. (2d) 188, 242 P. (2d) 174. Thereafter, we granted a petition for a rehearing before the entire court, and the case is again before us for disposition.

In the trial court, at the conclusion of plaintiff's case, the defendant made a motion for dismissal or, in the alternative, for a directed verdict. Defendant's counsel advanced three grounds in support of the motion: first, that plaintiff's personal injury lawsuit was barred by provisions of the state workmen's compensation act; second, that plaintiff's evidence failed to show negligence on the part of defendant; and third, that plaintiff's evidence showed, as a matter of law, (a) contributory negligence and (b) assumption of the risk of injury on the part of plaintiff.

The trial court granted the defendant's motion, took the case away from the jury, and ordered dismissal. In the absence of any indication to the contrary, we assume the

trial court considered all the grounds for dismissal urged by the defendant. After the case was heard originally, an opinion was filed in the matter, as pointed out above. We upheld the trial court's dismissal of the plaintiff's lawsuit. This was on the specific ground that provisions of the workmen's compensation act barred the plaintiff's common-law cause of action for personal injury. In reaching this decision, Department Two followed a unanimous decision, rendered shortly theretofore by the same Department, in the case of *Latimer v. Western Machinery Exchange,* 40 Wn. (2d) 155, 241 P. (2d) 923, wherein it was held that a self-employed individual, engaged in extrahazardous work, having the right or option to become *eligible* to obtain benefits under the workmen's compensation act by paying or causing insurance premiums to be paid in his behalf, was barred by provisions of the act from litigating in the courts of this state for a personal injury, irrespective of whether insurance premiums had been paid and irrespective of whether the injured individual actually had qualified and was entitled to industrial insurance benefits; in other words, the mere availability of an option or right to qualify for benefits under the act was a bar to any common-law cause of action for personal injury. A petition for rehearing was granted in connection with the *Latimer* case, *supra.* As a result, the court, sitting *En Banc,* overruled the unanimous Departmental decision originally reached in the *Latimer* case and held that a self-employed individual is not barred from personal injury litigation by provisions of the industrial insurance act, *unless there has been an election to take the benefits of the act by giving written notice and paying industrial insurance premiums* to the department of labor and industries; *Latimer v. Western Machinery Exchange, ante* p. 756, 259 P. (2d) 623.

■ The question involved here is adequately covered by the *En Banc* opinion filed in the *Latimer* case, and no further discussion of it, as one aspect of the instant appeal, is necessary. It is sufficient to state that, in view of our *En Banc* decision in the *Latimer* case, the trial court erred in construing provisions of the workmen's compensation act as a

statutory bar to appellant's cause of action; that is, in considering provisions of the act as a valid ground supporting the trial court's order of dismissal.

In passing, we note that each party contends that certain safety standards or regulations of the department of labor and industries were violated by the other. However, in view of the fact that the appellant in the instant case had not elected to be covered by the provisions of the workmen's compensation act, the safety standards or regulations would not seem to be applicable. Rem. Rev. Stat., § 7727, RCW 49.16.020, provides that the safety standards or regulations ". . . shall apply to all, and only those, establishments and employers and workmen subject to the provisions of" the workmen's compensation act.

It remains for us to give consideration to the other grounds urged in support of the trial court's order of dismissal.

Since respondent's motion for dismissal was made at the end of appellant's case, the appellant's evidence, and all reasonable inferences therefrom, must be considered in the light most favorable to him and interpreted most strongly against the moving party. *Bleyhl v. Tea Garden Products Co.*, 30 Wn. (2d) 447, 453, 191 P. (2d) 851.

Assuming compliance with the foregoing rule, then our decisions in *McQuillan v. Seattle;* 10 Wash. 464, 38 Pac. 1119, and *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 35 P. (2d) 749, indicate that our problem thereafter is to determine, first, whether appellant's evidence (interpreted most favorably to him) provides a basis for a reasonable difference of opinion concerning the matter of respondent's alleged negligence or culpability; or, in other words, whether the minds of reasonable men would all agree that no negligence was shown on the part of the respondent; and, second, whether there would be similar unanimity in the reactions or mental processes of all reasonable minds that appellant (a) was contributorily negligent and (b) had assumed the risks of injury. In the *Scott* case, *supra*, at p. 658, we said:

"Upon an issue as to contributory negligence, where there is evidence and inferences to be deduced therefrom by which

reasonable men may arrive at different conclusions, contributory negligence is a question for the jury. In passing upon that question, we must accept as true that view of the evidence most favorable to the respondent. *Bryant v. Hartford Eastern Ry. Co.*, 158 Wash. 389, 290 Pac. 874.

" 'In but two classes of cases may the question of negligence be determined by the court as a conclusion of law: (1) Where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances; (2) where the facts are undisputed and but one reasonable inference can be drawn from them. *McQuillan v. Seattle*, 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799. See, also, *Burian v. Seattle Electric Co.*, 26 Wash. 606, 67 Pac. 214; *Anderson v. Pacific National Lumber Co.*, 60 Wash. 415, 111 Pac. 337.

" 'And where the minds of reasonable men may differ, the legal sufficiency is for the jury.' *Bell v. Northwest Cities Gas Co.*, 164 Wash. 450, 2 P. (2d) 644.

"In determining the question of contributory negligence, due care or ordinary prudence under the circumstances is the only test. *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458; *North Coast P. Co. v. Cowlitz, C. & C. R.*, 108 Wash. 591, 185 Pac. 615. The existence of contributory negligence must be judged by respondent's condition and surroundings at the time of the accident, and whether, under the circumstances, he acted as a reasonably prudent man would have done.

" 'After an accident happens it is always easy to see many ways by which it could have been avoided, but such considerations do not usually afford a correct test of negligence. A victim of an accident is entitled to have his conduct judged by the circumstances surrounding him at the time of the accident—by the conditions as they appeared to one in his then situation—and if his conduct when so judged appears to be that of a reasonably prudent person, he cannot be said to be guilty of negligence.' *Hull v. Seattle, Renton & Southern R. Co.*, 60 Wash. 162, 110 Pac. 804.

"Ordinarily, the question of contributory negligence is for the jury. A court will determine the question only when but one reasonable conclusion can be reached from a given state of facts."

We note it is fairly easy and perhaps somewhat disarming to state the so-called pertinent principle as an abstract matter. But its beguiling simplicity fades upon its application to concrete situations. Then the going becomes more

difficult, to say the least. Does the phrase, "reasonable difference of opinion," have an objective quality? Can the mental reactions of a hypothetical "reasonable man" be ascertained accurately? What degree of scientific certainty is possible? These are some of the imponderables implicit in any use of the indicated phrases in disposing of the problems now confronting us in the instant case. In *Newton v. Pacific Highway Transport Co.*, 18 Wn. (2d) 507, 511, 139 P. (2d) 725, Robinson, J., commented on the use of the rule as follows:

"It is strongly urged that, under these circumstances, all reasonable men must agree that respondent was negligent.

"That unsatisfactory and illogical formula is universally employed by appellate courts in solving questions of this kind, even though its application not infrequently results, in effect, in a holding by five judges of an appellate court that the trial judge, ten or twelve jurors, and sometimes as many as four members of their own court, are not reasonable men."

The statement of facts shows that appellant arrived at respondent's log dump late in the afternoon with a truckload of short pulp logs stacked cross-wise on his truck. Several other log trucks were waiting ahead of appellant to be unloaded at the log dump. At the time, two methods were being used to unload the logging trucks: Some were unloaded at a ramp or platform by a sling or cables attached to a revolving drum. The cables were placed around truckloads of logs. The logs were then pulled off of the trucks onto the unloading ramp or platform and tumbled into the log pond. The top of the unloading ramp was about level with the bed of the average log truck. It was approximately four or five feet in width. The log pond was on one side of it and the trucks backed up to unload on the other side. Other trucks were unloaded by a Diesel crane at another location adjacent to the log pond. Appellant testified that on the particular occasion he observed the Diesel crane unloading other trucks at the other location adjacent to the log pond; that the crane was also engaged at the time in sorting logs; that the larger logs were being picked up by the

crane and dropped into the log pond. There was testimony that, occasionally, logs would not roll entirely off of the unloading ramp or platform and into the pond. The Diesel crane would then be used to clear the ramp. Appellant testified that several logs from a previous truckload were still on the ramp as he waited his turn to unload; that a Mr. Richardson, an employee of respondent in charge of the log dump, motioned him to back his truck into the ramp for unloading. Appellant did so, leaving a space of about one and one-half feet between the rear end of his truck and the unloading ramp.

There was testimony that some truckers, ostensibly for greater safety in their work, used stakes, inserted in holes or metal fittings on the rear end of their trucks, to secure their log loads; that, in unloading, the sling or cable would pull the logs against the stakes, they would break off, and the logs would then roll onto the ramp and into the pond. Other truckers and appellant did not use stakes. They used another method. Appellant's load of logs was held in place by wedges or "cheese blocks," inserted at the rear end of the truck between the bottom log and the truck bed, and between each rising tier of logs. The load of logs was encircled by a log chain and "binder." The binder, a device for taking up the slack in the log chain, was attached to the ends of the log chain and was located at the rear end of appellant's truck.

After backing up to the ramp, appellant walked to the rear end of his truck, loosened the binder, unfastened it from the chain encircling his load of logs, walked to the side of the truck, and threw the binder on the ground. He then went to the rear of his truck again and, standing on the unloading ramp, attempted to throw the log chain to one side. At that moment (when appellant's back was to the log pond), the Diesel crane dropped logs into the pond. Appellant testified that the vibration from the falling logs caused the back log on his truck to roll and kick out in the direction of the loading ramp where he was standing; that he had only two choices to avoid the truck load of logs

rolling upon him—one was to jump backwards into the pond and risk being pinned under water by the rolling logs, the other was to jump down between the edge of the unloading ramp and the rear end of his truck. He attempted the latter in an effort to escape the logs, rolling from his truck. He did not make it. Several logs from the truck, weighing three or four hundred pounds each, rolled on him, pinning the upper part of his body against the edge and top of the unloading ramp. Appellant was rendered unconscious and had no further recollection of what happened thereafter until he regained consciousness later in the hospital.

Mr. Richardson testified that he had warned officials of respondent company that some safety measures should be taken in connection with unloading the logging trucks or some one would be killed. There was testimony that the ground surrounding the unloading ramp vibrated and shook when the Diesel crane unloaded trucks or dropped logs into the pond. Appellant testified that he had hauled logs to the particular log dump for about a year, having made somewhere between 150 to 200 trips. He admitted that he knew the dropping of logs by the crane caused the ground to vibrate in and around the log dump. Mr. Richardson testified that the use of the binder on the rear end of the truckloads of logs was a dangerous practice; that it was a much safer practice for the binder to be placed on top and towards the front of the truckload; that on other occasions, he had seen truckloads of logs roll off of trucks when tension on encircling log chains was released by unfastening the binder device. On the other hand, appellant testified that he had never lost a load of logs; that the wedges or "cheese blocks," used by him, were satisfactory and had prevented his load from rolling; that it was no safer for the binder to be used on top of the load than at the rear. He testified, quite positively, that his back logs rolled and kicked out as a result of the vibration from the logs dropped by the crane into the pond.

Viewing appellant's evidence in the light most favorable to him, our problem, as stated heretofore, is to determine whether the minds of reasonable men would agree (a) that

respondent was not negligent, or that appellant was (b) contributorily negligent, or (c) voluntarily had assumed the risk of the injury; or, stated somewhat differently, whether a reasonably convincing basis exists for a difference of opinion respecting the foregoing questions.

The case is a close one. However, it seems to us that reasonable doubts are occasioned by the evidence and inferences therefrom most favorable to appellant. We would outline the evidence, and reasonable inferences therefrom, as follows: that respondent knew and had been warned about the dangers involved in the methods used in unloading logs at the dump; that there may have been a lack of due care by respondent in the particular use made of the Diesel crane simultaneously with appellant's unloading operations; that appellant had never lost a load of logs; that he had delivered many loads to the dump; that the wedges or "cheese blocks," as used by appellant on his numerous previous trips to the log dump over a period of years, had adequately held the logs in place on his truck; that he unfastened the binder, released the tension on the chain encircling his load of logs, walked to the side of the truck and threw the binder on the ground, without incident; that his load remained in place until the vibration from the operation of the Diesel crane caused the logs on the back of his truck to kick out.

Unquestionably, appellant was aware of the usual operations of the crane, the dropping of logs into the pond, and the usual vibration resulting therefrom. There can be no difference of opinion on this aspect of the matter. However, there is reasonable doubt as to whether respondent used ordinary care in its operations respecting the unloading ramp, and in its operation of the Diesel crane, and there is reasonable ground for a difference of opinion as to the extent, degree, and effects of the vibration from operation of the crane, which should have been anticipated by appellant, and as to whether the "cheese block," chain-and-binder method, as used by appellant, was a reasonably safe practice on his part.

We think the evidence, viewed most favorably to appellant on the basis of the rule which must be applied at

the nonsuit stage, is sufficiently clear to raise reasonable doubts respecting the question of respondent's alleged negligence; furthermore, that the evidence is not so clear against the appellant that the questions of contributory negligence and assumption of risk should have been taken away from the jury.

Respondent presented no evidence. It may very well be that respondent is in a position to present evidence that would convince a jury that respondent was not negligent, that appellant was contributorily negligent or had assumed the risk of injury. This, of course, remains to be seen upon further proceedings to be had in this matter.

The judgment of the trial court is reversed, and the case is remanded for further proceedings.

ALL CONCUR.

