[No. 33114.   *En Banc.*   March 8, 1956.]

LUCINDA MAY WHITE, *Respondent*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 294 P. (2d) 650.

*The Attorney General* and *Kenneth G. Burrows, Assistant,* for appellant.

*Jack Steinberg,* for respondent.

HILL, J.—The question presented on this appeal is whether the essence of a particular independent contract is the personal labor of the independent contractors, within the purview of the Laws of 1937, chapter 211, § 2, p. 1030 (Rem. Rev. Stat. (Sup.), § 7674-1 [*cf.* RCW 51.08.180, part]).

The exact wording of that section of our workmen's compensation act is as follows:

"The term workman within the contemplation of this act means every person in this state who is engaged in the employment of or who is working under an *independent contract, the essence of which is his personal labor* for any employer coming under this act whether by way of manual labor or otherwise in the course of his employment." (Italics ours.)

In four other cases, we have been called upon to determine the same question. The first of those cases was *Norman v. Department of Labor & Industries* (1941), 10 Wn. (2d) 180, 116 P. (2d) 360. Norman had a contract with Spokane county to eradicate poison ivy or poison oak from certain

county-owned lots, for a consideration of fifty dollars. Norman planned to burn off the leaves and then grub out the roots with a grubbing hoe. He used gasoline in the burning process, and it exploded and burned him. He had no employees and no equipment more complicated or expensive than a grubbing hoe. This is clearly the type of contract which the legislature had in mind as representing a situation where the personal labor of the independent contractor is the essence of the contract.

In *Haller v. Department of Labor & Industries* (1942), 13 Wn. (2d) 164, 124 P. (2d) 559, the plaintiff had a contract to clean a well for a Mr. Canady, for one hundred dollars. It was necessary to use a hoist on the job. Canady procured the hoist and furnished all the tools and equipment used. Haller made a deal with one Henry Overby to operate the hoist, offering him fifty per cent of the amount he, Haller, was to receive. During the progress of the work, something went wrong with the hoist, and the bucket fell into the well, injuring Haller. The decisive factor in the holding that the essence of Haller's contract with Canady was not Haller's personal labor was the fact that one person, unaided, could not clean out the well. That case is authority for the proposition that, where the contracting parties must know that the independent contractor cannot personally perform all the work required by the contract, the essence of the contract is not the personal labor of the independent contractor.

In *Crall v. Department of Labor & Industries* (1954), 45 Wn. (2d) 497, 275 P. (2d) 903, Crall had contracted with a Mr. Sanford to haul logs for seven dollars a thousand board feet. Crall owned several logging trucks and hauled for different operators as the opportunity arose. Although Crall drove one of the trucks, he employed other drivers any of whom could have driven the logging trucks carrying the Sanford logs. Crall was injured while hauling logs under his contract with Sanford. We held that Crall's personal labor was not the essence of his contract. There were at least two reasons for so holding: (1) Where the independent contractor is engaged in the same type of contract with others and has employees who customarily do part of the

work, it is contemplated by the contracting parties, unless otherwise stipulated, that the employees may be used in the performance of the contract; (2) the contract could not be performed without the use of expensive machinery or equipment, *i. e.,* logging trucks. However, the decision was based upon the proposition that labor which can be done by others is not "personal" as that word is used in the section of the statute we are now considering. (If "labor which can be done by others" were changed to "labor which it is contemplated will be done by others, in whole or in part," this would be but a restatement of the first reason suggested.)

In *Cook v. Department of Labor & Industries* (1955), 46 Wn. (2d) 475, 282 P. (2d) 265, Cook had a contract with a lumber company to cut, skid, load, and haul certain timber owned by the company, for twenty-five dollars a thousand feet. Cook owned, and used in the performance of the contract, a chain saw, tractor, and truck. One person could cut, skid, and haul the timber, but it was impracticable, though perhaps not impossible, for one person to load the truck. Cook had no employees, but his wife operated the truck for part of each day to aid in the loading. Cook was injured on the job. We held that his personal labor was not the essence of his contract, and there were at least two reasons for so holding: (1) The contracting parties must have known that, as to a substantial part of the work, it would not be practicable for the independent contractor to carry out the contract without assistance (*Haller v. Department of Labor & Industries, supra*); (2) the contract could not be performed unless the independent contractor furnished expensive machinery or equipment, *i. e.,* the tractor and truck (and perhaps the chain saw should be included). However, the decision was based upon the *Crall* case, *supra.* Citing that case, we said: "Labor that may be done by others under the contract is not *personal,* as the word is used in the statute."

We are now convinced that the language of the *Crall* and *Cook* cases is too broad, and that the legislature in 1937, in adopting the section of the workmen's compensation act with which we are now concerned, had something more in

mind than the protection of independent contractors in those extremely rare cases in which the party for whom the work is done requires the personal services of the independent contractor and is unwilling that any part of the work be done by someone else. We conclude that the statutory provision with which we are here concerned was intended to protect workmen (and to make contracting parties for whom the work is done responsible for industrial insurance premiums) in those situations where the work could be done on a regular employer-employee basis but where, because of the time, place, manner of performance, and basis of payment, it could be urged that the workman was an independent contractor rather than an employee. Prior to the 1937 enactment, the independent contractor, when injured, was not entitled to the protection of the workmen's compensation act, and the party with whom he had contracted was excused from paying premiums. It was felt to be desirable, and rightly so, to eliminate the technical issue of whether the workman was an employee or an independent contractor by giving him protection in either situation.

The requirement that the contract of any independent contractor who comes within the purview of § 2 of the 1937 enactment must be one "the essence of which is his personal labor" clearly indicates that it was not intended to cover an independent contractor (a) who must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract (the *Crall* and *Cook* cases, *supra*), or (b) who obviously could not perform the contract without assistance (the *Haller* and *Cook* cases, *supra*), or (c) who of necessity or choice employs others to do all or part of the work he has contracted to perform (the *Haller* and *Crall* cases, *supra*).

With the background of these four cases and their decisive features, we now turn our attention to the facts in the present case.

James Steiner was a partner in a sawmill operation. We shall hereinafter refer to the Steiner mill as though it were an entity and the contracting party, because it is so re-

ferred to generally throughout the record. The Steiner mill owned or was purchasing the timber on a certain tract of land. It had employed a man to do the falling and bucking on that particular tract, paying him eight dollars per thousand board feet.

Lucinda May White, the claimant here, and her husband, William H. White, owned a donkey engine. In January, 1951, they orally contracted with the Steiner mill to move their donkey engine onto the tract in question and to yard out and cold deck the logs, for which they were to be paid twelve dollars per thousand board feet. It was thought that it would take about two months to complete the contract.

It is conceded, for the purposes of this appeal, that the Whites were independent contractors. It was understood that they would both work, Mrs. White's duties to consist of operating the donkey engine. It is likewise recognized that, without the donkey engine, the Whites could not have performed the contract. Mrs. White testified that they were approached about doing the work because "we had equipment."

They moved onto the tract about February 1, 1951. After work under the contract had proceeded for approximately three weeks, the Steiner mill discharged the man who had been hired to do the falling and bucking and made inquiry of the Whites as to whether they knew of a man who could do that work. The Whites did know such a man, and the Steiner mill then agreed to pay the Whites twenty dollars instead of twelve dollars per thousand board feet for logs furnished the mill, the latter to assume responsibility for the falling and bucking. The Whites then secured a Mr. Lydey to do that work, compensating him at the rate of eight dollars per thousand board feet, which was the same amount that the Steiner mill was allowing them for the additional work under their contract.

It is to be noted that Lydey was hired and paid by the Whites, and that he had no relationship with the Steiner mill either as an employee or as an independent contractor. The Whites became employers under our workmen's compensation act. Laws of 1939, chapter 41, § 2, p. 122 (Rem. Rev.

Stat. (Sup.), § 7675, part [*cf,* RCW 51.08.070]). The exact wording of the pertinent portion of that section of the act is as follows:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work, by way of trade or business, or *who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen,* in extra-hazardous work." (Italics ours.)

Under the contract as thus modified, operations continued for another period of approximately three weeks, until March 21, 1951, when Mrs. White was seriously injured while operating the donkey engine.

Mrs. White claimed benefits under the workmen's compensation act. Her claim was rejected by the department of labor and industries because, as an independent contractor, she was not covered by our workmen's compensation act; and on her appeal to the board of industrial insurance appeals, the board sustained the department. Upon an appeal to the superior court, the trial judge reached the conclusion that Mrs. White

". . . at the time of her injury was an independent contractor doing extra-hazardous work in the logging industry and the essence of her contract was her personal labor,"

and entered a judgment based upon that conclusion, the effect of which was to reverse the board of industrial insurance appeals and the department, and to establish her right to benefits under the act.

The conclusion that the essence of her independent contract was her personal labor cannot be reached without overruling the *Crall* and *Cook* cases, *supra.* If those cases were correctly decided—and we believe that they were—the judgment of the superior court must be reversed.

We are satisfied, for three reasons, that the essence of the contract between the Whites and the Steiner mill was not the personal labor of the Whites: (1) because the

Whites had of necessity to furnish expensive machinery and equipment, *i. e.,* the donkey engine (as distinguished from the usual hand tools), to be able to perform the contract; (2) because after the modification of the contract the contracting parties knew that the independent contractors, the Whites, could not personally perform all the labor required by the contract; and (3) because after the modification of the contract the Whites did employ Lydey to do part of the work they had contracted to perform.

The trial court erred in concluding that the essence of the Whites' contract with the Steiner mill was their personal labor. The judgment based upon that conclusion must be reversed and the order of the department of labor and industries (sustained by the board of industrial insurance appeals) denying the application of the claimant for relief under the workmen's compensation act must be affirmed.

Two matters not essential to the decision should, however, be clarified.

First, although we hold that where an independent contractor must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools), the essence of his contract is not his personal labor, the mere fact that a man owns and uses machinery and equipment in his work does not make him an independent contractor. If in his operation of his truck, tractor, or other equipment, whatever it may be, he is subject to the direction and control of the employer, he is an employee and hence a workman under the act, even though the amount paid for the use of his equipment may be much more than is paid for his services as the operator thereof. See *Burchett v. Department of Labor & Industries* (1927), 146 Wash. 85, 261 Pac. 802, 263 Pac. 746. (In that case, it was stressed, also, that Burchett was subject to discharge at any time, as an additional element in determining that he was an employee and not an independent contractor.)

Second, the fact that a man actually engaged in extrahazardous industry is an independent contractor not covered by the workmen's compensation act under the provisions of the Laws of 1937, chapter 211, § 2, p. 1030 (Rem.

Rev. Stat. (Sup.), § 7674-1 [*cf.* RCW 51.08.180, part]), does not prevent him from having the protection of the act if he desires to qualify as a working employer under the Laws of 1939, chapter 41, § 2, p. 123 (Rem. Rev. Stat. (Sup.), § 7675, part [*cf.* RCW 51.32.030]), gives the necessary notice to the director of labor and industries, and pays the necessary premiums. *Pink v. Rayonier, Inc.* (1953), 42 Wn. (2d) 768, 259 P. (2d) 629, (1952) 40 Wn. (2d) 188, 242 P. (2d) 174; *Latimer v. Western Machinery Exchange* (1953), 42 Wn. (2d) 756, 259 P. (2d) 623, (1952) 40 Wn. (2d) 155, 241 P. (2d) 923; *Johnson v. Department of Labor & Industries* (1949), 33 Wn. (2d) 399, 205 P. (2d) 896. The fact that in the *Latimer* and *Pink* cases the injured parties found it more advantageous to be outside the protection of the act does not change the fact that they could have been under its protection if they had so desired.

The judgment is reversed.

HAMLEY, C. J., MALLERY, SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

FINLEY, J. (dissenting)—As pointed out in the majority opinion, this is an industrial insurance case in which the board of industrial insurance appeals sustained the action of the supervisor of the department of labor and industries and rejected a claim for benefits under the industrial insurance act. On appeal, the superior court for King county reviewed the record as made and considered by the board and entered findings of fact and the following conclusions of law:

"I That the plaintiff at the time of her injury was an independent contractor doing extra-hazardous work in the logging industry and the essence of her contract was her personal labor.

"II That at the time of her injury the plaintiff herein was covered by the Workmen's Compensation Act and is entitled to all the benefits thereto.

"III That the decision of the Board of Industrial Insurance Appeals herein should and is hereby reversed and the claim of the plaintiff should be referred to the Department of Labor and Industries and the said Department should be

directed to proceed in accordance with the findings of this court.

"IV . . ."

The judgment of the superior court reversed the action of the board. This appeal followed.

Appellant's assignments of error raise one basic question: namely, whether the relationship between the Steiner mill and Mr. and Mrs. White entitled the latter to industrial insurance benefits under the following provisions of the industrial insurance act:

"The term workman within the contemplation of this act means every person in this state who is engaged in the employment of or who is working under an *independent contract, the essence of which is his personal labor* for any employer coming under this act whether by way of manual labor or otherwise in the course of his employment." Rem. Rev. Stat. (Sup.), § 7674-1 [*cf.* RCW 51.08.180]. (Italics mine.)

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work, by way of trade or business, *or who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen,* in extra-hazardous work." Rem. Rev. Stat. (Sup.), § 7675 [*cf.* RCW 51.08.070] (Italics mine.)

Respondent concedes that she and her husband were *independent contractors* at the time she was injured. Consequently, the question to be determined narrows down to the proposition of whether the personal labor of Mr. and Mrs. White was the essence or *sine qua non* of the contract of employment with the Steiner mill.

The facts are substantially as stated in the majority opinion. From these, the majority reasons, among other things, that Mr. Lydey became an employee of Mr. and Mrs. White; that because the Whites thus became employers, their personal labor could not be the essence of their contract with the Steiner mill. However, it appears to me just as logical to conclude from the facts that, in so far as the Whites were concerned, the arrangement with Mr. Lydey was purely an accommodation to the Steiner mill—Mr.

Lydey merely stepped into the shoes of the faller and bucker theretofore employed by the mill; that the Whites in making the arrangements with Mr. Lydey were not principals, but merely agents of the mill.

The majority further emphasize the fact that the contract with the Whites contemplated the use of the donkey engine which the Whites owned. Therefrom, it is reasoned that the donkey engine became a significant factor in the contract, and that as a consequence, the personal labor of the Whites could not be said to be the essence of their contract with the mill. In this connection, the majority state that the status of an employee is not changed into something else merely because he owns and uses certain mechanical equipment rather than ordinary hand tools in the performance of his work as an employee. Rem. Rev. Stat. (Sup.), § 7675, defines an employer as one " . . . who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen . . . " It is difficult for me to see how the use of a donkey engine or other mechanical equipment changes the meaning of the phrase, *the essence of which is the personal labor,* when used in relation to an independent contractor, but does not do so in relation to an employee or workman. In any event, I think the arrangements between Mr. Lydey, the Whites and the Steiner mill—and the fact that the donkey engine owned by the Whites was used in their work—did not prevent the personal labor of the Whites from being the essence of the contract with the Steiner mill.

In *Norman v. Department of Labor & Industries,* 10 Wn. (2d) 180, 116 P. (2d) 360, this court referred to the above-quoted statutory provisions as the 1937 and 1939 legislative amendments to the industrial insurance act. The court pointed out that an independent contractor was not entitled to industrial benefits prior to the enactment of the 1937 statutory amendment, above quoted, saying:

"We hold that it was the intention of the legislature to *broaden the industrial insurance act,* and bring under its protection independent contractors whose *personal efforts* constitute *the main essential* in *accomplishing the objects*

*of the employment,* and this, regardless of who employed or contracted for the work." (Italics mine.)

In *Haller v. Department of Labor & Industries,* 13 Wn. (2d) 164, 124 P. (2d) 559, this court said:

"Manifestly, the legislature intended, by the enactment of the two amendments, to extend industrial insurance protection to some, but not all, independent contractors whose contracts call for the performance of extrahazardous work. *Whether or not, in a given case, an independent contractor is a 'workman' must, we think, depend upon the provisions of the contract, the nature of the work to be performed, the situation of the parties, and other attendant circumstances.*" (Italics mine.)

A number of state legislatures have been confronted with the common-law definition of "independent contractor," which potentially excludes large groups of industrial workers from the protection of industrial insurance, and have enacted legislation to meet the problems involved. Louisiana has provided coverage for an independent contractor when a "substantial part" of his work time is spent in "manual labor" in carrying out the terms of the contract; La. Rev. Stat. (1953), § 23:1021. Wisconsin has included within the coverage of its act *an independent contractor, doing work which is part of his employer's business, while not holding himself out as rendering services to the public;* Wisc. Stat. (1943), § 102.07 (8). Colorado has provided that any "lessee, sub-lessee, contractor or sub-contractor," as well as his employees, is an employee of any one who conducts his business by leasing or contracting out any or all of his work to them; Colo. Rev. Stat. (1953), § 81-9-1.

In the brief of the attorney general in the *Haller* case, *supra,* the intention or purpose of the legislature in enacting the 1937 and 1939 amendments, above quoted, is interestingly and aptly explained as follows:

"In passing the 1937 and 1939 amendments, the legislature was undoubtedly seeking to cure a practice which had grown to alarming proportions whereby employers let labor contracts to individuals, either *singly or collectively,* under the guise of independent contracts and thereby sought

to escape liability for industrial insurance premiums. *The essence of such contracts was the performance of personal labor by the contractors.* The legislature felt, and rightly so, that labor contracts which involved nothing more than the performance of labor by *one or a group of persons* should not be perverted into an independent contract with the usual common law incidents of such a relationship; that the letting of a labor contract directly to *one or a group of individuals* on a lump sum basis rather than a per diem or hourly wage basis was a mere subterfuge which required legislative correction." (Italics mine.)

In cases of industrial insurance claims involving an independent contractor relationship, it is the contract between the parties—or rather, the question of *what would constitute performance of the contract*—that should be emphasized. It is not a question of whether the work or the job contemplated by the contract, actually, as a matter of fact, could have been performed in whole or in part by someone other than the claimant. The test should be whether the work or job performed by someone other than claimant *would constitute performance of the particular contract.* Perhaps the distinction lies in the difference between the phrase, "performance of the work" and the phrase, "performance of the contract." The determining factor is not whether the work required the labor of one or more workmen other than the claimant, or that the work, as a matter of fact, could have been done by a workman or some workmen other than the claimant. A high percentage of industrial work could be performed by any number of industrial workmen. In enacting the 1937 and 1939 amendments, the legislature certainly did not intend to limit coverage under the act to the relatively few independent contractors (workmen) whose work was so unique that it could not in fact (irrespective of the particular contract) be performed by anyone else. The question determining the matter of coverage under the act is not whether the work in fact could be done by another workman, but whether work done by someone other than the contracting party or worker would have constituted performance of the particular contract.

As mentioned hereinbefore, the decision of the board in the instant case states:

"It was understood by the parties that both Mrs. White and her husband would work. Mrs. White's duties to consist of operating the donkey engine."

The record before the board further shows that the Whites usually worked when the mill was being operated, but, when the supply of logs was short and they were requested to do so, the Whites worked longer hours. Furthermore, from time to time, the mill required the Whites to supply logs of different lengths, depending on the lumber to be cut or manufactured by the mill. It appears to me that, if Mr. and Mrs. White had sent someone else on the job who then yarded and decked logs for the mill, this would not have constituted performance of the Whites' obligation to the Steiner mill. I do not think the Whites could have forced such a new arrangement on the mill and thereupon collected at the prescribed rate for all logs yarded by someone other than themselves. Their personal labor was the essence of the contractual relationship.

I think that from the outset of the arrangement with the Steiner mill the Whites were either (1) employees of the mill or (2) were independent contractors covered by the act. The nature or character of the relationship continued, despite the discharge by the mill of the faller and bucker, originally employed, and the subsequent arrangements between the Whites, Mr. Lydey, and the mill.

Considering (a) the intent or purposes of the legislature in enacting the 1937 and 1939 amendments, as emphasized in the quotation above from the *Norman* case, (b) the problem involved in the enactment of the amendments, as emphasized by the above quotation from the brief of the attorney general in the *Haller* case, (c) the trend of legislation in other jurisdictions, (d) the statement of this court in the *Haller* case, indicating that the facts and circumstances must be considered and will be controlling in cases involving application of the 1937 and 1939 amendments, and (e) the facts and circumstances in the instant case, I

am persuaded that Mrs. White's personal labor was essential to the *performance of the particular contract.* It is true that Mr. White's personal labor was essential to performance. Thus, with the personal labor of one, but without the personal labor of the other, there could have been no performance of the particular contract. It follows that the personal labor of *each and of both* was essential to the performance of the particular contract.

Appellant emphasizes the fact that Mr. White and Mr. Lydey, the faller and bucker, supplied logs to the mill after Mrs. White was injured. It is urged that this indicates the personal labor of Mrs. White was not of the essence. However, I think it is clear that the work performed after Mrs. White's injury was pursuant to a new arrangement or contract between the mill and Mr. White and Mr. Lydey, or under a modification of the contract existing at the time of Mrs. White's injury.

I agree with the trial court that the essence of the contract was the personal labor of Mrs. White (respondent-claimant herein). I would affirm the judgment of the trial court.

ROSELLINI and OTT, JJ., concur with FINLEY, J.